# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 23, 2009

Charles R. Fulbruge III
Clerk

No. 07-41272

AUBRIS RESOURCES LP, formerly known as
United Resources LP, formerly known as
United Oil and Minerals Limited Partnership

Plaintiff - Appellant

v.

ST. PAUL FIRE AND MARINE
INSURANCE CO

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, DAVIS, and DeMOSS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this appeal we decide what effect a general indemnity provision in an oilfield services agreement has on the scope of additional insured coverage required by the same agreement. United Oil and Minerals filed this action in federal court, seeking a declaratory judgment that St. Paul Fire and Marine Insurance Company has a duty to defend United in state court lawsuits arising from an explosion at an oilfield that was serviced by St. Paul's insured, J&R Valley Oil Services. Under its services agreement with J&R Valley, United was J&R Valley's additional insured. St. Paul, however, denied additional insured

coverage, citing a general indemnity provision in the services agreement whereby United agreed to indemnify J&R Valley for causes of action arising from United's own negligence. St. Paul argued, and the district court agreed, that the general indemnity provision necessarily limited the scope of United's additional insured coverage under the services agreement. We conclude, however, that Texas case law instructs otherwise and construe the services agreement in favor of coverage. Accordingly, we vacate summary judgment for St. Paul and render judgment in favor of United.

I.

We begin with the relevant facts.

United hired J&R Valley to service its oilfield properties in April 2002. Their services agreement required that J&R Valley carry commercial general liability insurance and name United an additional insured under that policy. The agreement also contained a general indemnity provision, whereby United agreed to indemnify J&R Valley for causes of action arising from United's own negligence.

On October 20, 2003, an explosion at one of United's oilfields severely injured two J&R Valley employees, Ernesto Garza and Carlos Figueroa. Garza later died from his injuries. Thereafter Garza's estate and Figueroa sued both J&R Valley and United in a Texas state court, alleging negligence. J&R Valley was dismissed from the lawsuits because under the Texas Workers' Compensation Act neither employee could recover from J&R Valley under a theory of simple negligence.[1] The lawsuits against United, however, proceeded.

The practical question here is who will pay for United's expense in the Garza litigation. J&R Valley purchased its commercial general liability

---

[1] Garza's estate also asserted a wrongful death claim against J&R Valley, alleging gross negligence. That claim was not barred by the Texas Workers' Compensation Act. J&R Valley ultimately settled that claim with the Garza estate.

insurance policy from St. Paul Fire and Marine Insurance Company. That policy covers additional insureds, but only where specifically required in a written agreement. United contends that under its services agreement with J&R Valley it is an additional insured, and therefore St. Paul had a duty to defend it in the Garza litigation. St. Paul counters that United is not an additional insured for causes of action arising from United's own negligence.

United and St. Paul dispute whether two of the services agreement's provisions–the additional insured provision and the general indemnity provision–interrelate. The additional insured provision states that United is an additional insured except with respect "to any obligations for which UNITED has specifically agreed to indemnify" J&R Valley; the general indemnity provision states that United will indemnify J&R Valley for causes of action arising from United's own negligence. St. Paul reads the two provisions together, such that there is no coverage in causes of action arising from United's own negligence. United, on the other hand, argues there is no relationship between the two provisions, and coverage is determined by reference only to the additional insured provision. United reads the additional insured provision to provide that United is an additional insured unless it separately and extra-contractually agrees to indemnify J&R Valley. Because it has not separately agreed to indemnify J&R Valley in connection with the Garza litigation, United insists the Garza litigation is covered under the St. Paul policy.

The district court, in granting summary judgment for St. Paul, rejected United's interpretation as unreasonable because it agreed with St. Paul that the general indemnity provision necessarily limited additional insured coverage. We conclude, however, that in the light of recent Texas case law United's interpretation is at least reasonable and therefore construe the disputed provisions in favor of coverage.

3

II.

We review the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. *United States v. Corpus*, 491 F.3d 205, 209 (5th Cir. 2007). Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

Where federal jurisdiction is based on diversity of citizenship, a federal court applies the substantive law of the forum state. *See Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79 (1938)); *see also Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc.*, 220 F.3d 679, 680-81 (5th Cir. 2000). The parties agree that the substantive law of Texas applies in this case.

Under Texas law, the same general rules apply to the interpretation of contracts and insurance policies. *See, e.g., Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). The contract should be "considered as a whole" and "each part of the contract should be given effect." *Forbeau v. Aetna Life Ins. Co.*, 876 S.W. 2d 132, 133 (Tex. 1994). Our primary concern is to ascertain the parties' true intent, as expressed in the language of the policy. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W. 2d 462, 464 (Tex. 1998). "We cannot adopt a construction that renders any portion of a policy meaningless, useless, or inexplicable." *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 (Tex. 2008).

If a provision has more than one reasonable interpretation, a court must interpret it in favor of the insured, provided that interpretation is not unreasonable, and even if the insurer's interpretation is *more* reasonable. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). "In particular, exceptions or limitations on liability are strictly

construed against the insurer and in favor of the insured." *Id.* We therefore adopt United's interpretation in this case if in our review we conclude it is at least reasonable.

### III.

### A.

Our starting point is the insurance policy itself. The St. Paul insurance policy is a standard commercial general liability policy that includes the following additional insured endorsement:

> Any person or organization that you agree in a written contract for insurance to add as an additional protected person under this agreement is also a protected person for the following *if that written contract for insurance specifically requires such coverages* for that person or organization . . . .

(Emphasis added.)

We then turn to the services agreement with United, i.e., the "written contract for insurance," and ask whether it requires coverage in the underlying Garza litigation. We look to the services agreement's additional insured provision, which appears in section 10.2. That provision states, in relevant part:

> UNITED and its subsidiaries, affiliated companies, co-owners, partners and joint venturers (if any), and their respective members, managers, officers, directors, agents, and employees shall be named as additional insureds in each of Contractor's policies, except Workers' Compensation; **however, such extension of coverage shall not apply with respect to any obligations for which UNITED has specifically agreed to indemnify Contractor**.

(Emphasis added.)

Section 10.2 plainly requires that J&R Valley name United an additional insured. The present dispute, however, arises from section 10.2's stipulation that there will be no additional insured coverage for "any obligations for which UNITED has specifically agreed to indemnify [J&R Valley]." St. Paul argues this exclusionary language in section 10.2 refers to United's agreement, in

5

section 11.1, to indemnify J&R Valley for causes of action arising from its own negligence. Section 11.1, which is titled "GENERAL INDEMNITY," states, in relevant part:

> UNITED SHALL PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS J&R AND ITS OFFICERS, DIRECTORS, AGENTS, AND EMPLOYEES FROM AND AGAINST ALL CLAIMS, DEMANDS, AND CAUSES OF ACTION ASSERTED BY ANY PERSON (INCLUDING BUT NOT LIMITED TO EMPLOYEES OF J&R AND UNITED) THAT ARISE OUT OF OR ARE RELATED TO WORK AND ARE CAUSED BY OR ARISE OUT OF UNITED'S NEGLIGENT ACTS OR OMISSIONS . . . .

B.

Thus, to determine the additional insurance coverage question presented in this appeal, we now turn to consider the relationship between and among the policy, the additional insured provision in the services agreement, and the indemnity provision in the services agreement.

St. Paul argues that because in section 11.1 United agreed to indemnify J&R Valley for causes of action arising out of its own negligence, United is not an additional insured in the Garza litigation under the terms of section 10.2, which excepts from such coverage United's obligations to indemnify J&R Valley.

United, however, disputes any relationship between sections 10.2 and 11.1. It argues that under Texas case law section 11.1's indemnity provision does not operate to limit additional insured coverage under section 10.2. United relies primarily on *Evanston Insurance Company v. ATOFINA Petrochemicals, Inc.,* 256 S.W. 3d 660 (Tex. 2008), a recent opinion of the Texas Supreme Court, which United argues requires us to apply only section 10.2–and not section 11.1–in determining coverage here. Furthermore, United reads section 10.2 not to apply because it excludes coverage only in the event United separately and extra-contractually agrees to indemnify J&R Valley, and it has not agreed to indemnify J&R Valley in connection with the Garza litigation.

We agree that *Evanston Insurance* is instructive and that, in the light it provides, we must look only to section 10.2, the additional insured provision itself, as to whether there is coverage in this case. We also agree with United that, relatedly, section 10.2 reasonably can be construed as providing additional insured coverage, where there is no specific indemnity agreement relating to the Garza litigation.

*Evanston Insurance* is instructive because in many respects it is indistinguishable from the case before us. In particular, its underlying facts mirror those at hand: ATOFINA Petrochemicals hired Triple S to perform maintenance at an ATOFINA oil refinery. ATOFINA was made an additional insured under Triple S's policy with Evanston Insurance Co. A Triple S employee drowned while servicing an ATOFINA refinery, and his estate sued both Triple S and ATOFINA. Triple S was dismissed from the lawsuit, consistent with the Texas Workers' Compensation Act. ATOFINA and Triple S's insurer, Evanston, then disputed who would pay for the expense of the remaining litigation. ATOFINA argued that it was an additional insured; Evanston, citing ATOFINA's agreement to indemnify Triple S for ATOFINA's own negligence, denied that its policy covered ATOFINA for the remaining litigation.

The issue presented the Texas Supreme Court was virtually the same as presented us: whether the parties' indemnity agreement operated to limit the scope of ATOFINA's additional insured coverage. As here, in the parties' service contract ATOFINA had disclaimed any right of indemnity for losses caused by its own negligence; in the same contract, Triple S had agreed to name ATOFINA an additional insured in its policy with Evanston. On the basis of the policy's additional insured provision, ATOFINA claimed it was an additional insured for the purposes of the underlying litigation. The state trial court and court of appeals, however, agreed with Evanston that, because ATOFINA, in the service

contract, had disclaimed any right of indemnity for losses caused by its own negligence, ATOFINA was not an additional insured for those losses.

The Texas Supreme Court reversed, holding in favor of coverage for ATOFINA. It pointed out that ATOFINA had not sought indemnity from Triple S. Instead, it had sought indemnification from Evanston on the basis that it was Triple S's additional insured. The Texas Supreme Court explained that, "[i]nstead of looking, as the court of appeals did, to the indemnity agreement in the service contract to determine the scope of any coverage, we base our decision on the terms of the umbrella insurance policy itself." *Id*. at 664. Because by its own terms that policy covered ATOFINA "with respect to operations performed by [Triple S]," ATOFINA was an additional insured covered by the Evanston policy for the purposes of the underlying litigation, notwithstanding any indemnity agreement with Triple S.

We take from *Evanston Insurance* that in determining whether there is coverage, a court looks only to the additional insured provision itself; that indemnity is a separate, and later arising, question from coverage. It is true that under the insurance policy in this case, unlike *Evanston Insurance*, additional insured coverage must be specifically required by the services agreement, and there is no question but that the services agreement specifically states that United be named an additional insured under J&R Valley's policy. It also is true that, like *Evanston Insurance*, this agreement includes, in a separate section, a general indemnity provision.[2] Yet, it is not material to the *Evanston* rule whether the additional insured provision is finally determined in the policy or with the aid of the parties' service contract. The separate

---

[2] It is also true that the agreement's additional insured provision in section 10.2 stipulates that there will be no coverage for "any obligations for which UNITED has specifically agreed to indemnify [J&R Valley]." We address the effect of that language when we interpret section 10.2 itself.

indemnity provision is not applied to limit the scope of coverage. Indeed, on this point the Texas Supreme Court could not have been clearer:

> We have noted that where an additional insured provision is separate from and additional to an indemnity provision, the scope of the insurance requirement is not limited by the indemnity clause.

*Id.* at 664 (citing *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 804 (Tex. 1992)).

Here, United is not seeking indemnity from J&R Valley. It instead seeks to enforce St. Paul's duty to defend it on the basis that it is J&R Valley's additional insured. As in *Evanston Insurance*, we have an additional insured provision that is separate from, and additional to, an indemnity provision. As *Evanston Insurance* makes clear, the scope of additional insured coverage here is not limited by the separate general indemnity provision found in section 11.1.

## C.

Thus, by excluding section 11.1 as a factor, we have determined that coverage here depends upon section 10.2, as it stands by itself. We now must ask whether this section reasonably can be construed as requiring additional insured coverage.[3] United reads section 10.2 to exclude coverage only in the event United separately and extra-contractually agrees to indemnify J&R Valley. The question we now must ask is whether that interpretation is at least reasonable. We conclude that it is.

---

[3] St. Paul points out that we are interpreting a services agreement, not an insurance policy; we therefore should apply the general rules of contract interpretation, not the special rules of insurance policy interpretation. Consequently, we should not adopt an interpretation of section 10.2 in favor of coverage merely because we conclude United's interpretation is at least reasonable. However, we see no reason why the special rules of insurance policy interpretation should not apply where, as here, the insurance policy's additional insured endorsement incorporates section 10.2 by reference. The endorsement extends policy coverage to parties with whom J&R Valley agrees "in a written contract for insurance" to add as an additional insured. The endorsement thus incorporates a separate "written contract for insurance"–here, section 10.2 of the services agreement. *See, e.g., Tribble & Stephens Co. v. RGM Constructors, LP*, 154 S.W.3d 539, 663 (Tex. App. 2004, pet. denied) (separate agreements may be incorporated by reference).

In reaching this conclusion, we acknowledge that section 10.2 itself stipulated that there will be no additional insured coverage for "any obligations for which UNITED has specifically agreed to indemnify [J&R Valley]." However, we do not think that this exclusionary language reasonably can be read to exclude from coverage all incidents for which United could possibly owe J&R Valley indemnity. We note that section 10.2 excludes obligations for which United has *specifically*, not *generally*, agreed to indemnify J&R Valley. The qualifier "specifically" reasonably can be read to indicate that United intended to forego additional insured coverage only in the event United makes a separately considered and extra-contractual decision, i.e., to *specifically* agree to indemnify J&R Valley.

This reading is not inconsistent with the oilfield services agreement as a whole, an important purpose of which was to *secure* insurance coverage for United during the course of the contract's performance. Section 10.2 unequivocally states that United and its affiliates "shall be named as additional insureds." When United bargained to be J&R Valley's additional insured, it is reasonable to assume that neither party intended the requirement to be a virtual cipher, excluding from additional insured coverage all incidents for which it could possibly owe J&R Valley indemnity under a general indemnity provision. It is also improbable the parties intended that the general indemnity provision of the oil services agreement would determine an additional insured obligation. To hold otherwise arguably would ignore the parties' true intent in negotiating insurance coverage for the operations performed under the oilfield services agreement, *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W. 2d 462, 464 (Tex. 1998) (court's primary concern is to ascertain the parties' true intent), or would risk rendering the additional insured requirement meaningless. *See Evanston Insurance*, 256 S.W.3d at 668 n.27 ("We cannot adopt a construction that renders any portion of a policy meaningless, useless, or inexplicable.")

(citing *ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co.*, 185 S.W.3d 440, 444 (Tex. 2005) (per curiam)).

We conclude, then, that because United's argument is not unreasonable, United was an additional insured under the circumstances presented. The general indemnity provision in United's services agreement with J&R Valley does not itself limit the scope of United's additional insured coverage. The services agreement's additional insured provision reasonably can be read to require coverage unless United separately and extra-contractually agrees to indemnify J&R Valley. Because United has not separately agreed to indemnify J&R Valley in connection with the Garza litigation, it is a covered insured under the St. Paul policy.

IV.

For the reasons we have explained, we vacate the summary judgment for St. Paul and render judgment for United.

We remand to the district court to enter judgment not inconsistent with this opinion and for further proceedings, if any, it considers appropriate.

VACATED, RENDERED, and REMANDED.