# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 29, 2009

No. 08-40843

Charles R. Fulbruge III

Clerk

BASIC ENERGY SERVICES, LP, formerly doing business as
BASIC ENERGY SERVICES, INC.

Plaintiff - Appellant

v.

GREAT NORTHERN INSURANCE CO.

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:06-CV-104

Before JONES, Chief Judge, and GARZA and STEWART, Circuit Judges.

PER CURIAM:[*]

In this insurance coverage dispute, a diversity action under Texas law, plaintiff-appellant Basic Energy Services, LP ("Basic Energy") appeals the district court's grant of summary judgment to defendant-appellee Great Northern Insurance Co. ("Great Northern"). At issue is whether, under the general commercial liability ("GCL") insurance policy issued to Basic Energy by Great Northern (the "Policy"), Great Northern had a duty to defend Basic

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Energy in a third-party lawsuit, as well as a duty to indemnify Basic Energy for expenses in defending and settling the suit. Specifically, the appeal turns on whether the claims alleged in the third-party complaint against Basic Energy are "property damage" covered by the Policy, and, if so, whether such coverage is precluded by the policy's Pollution Exclusion. Because we conclude that, even if the third-party suit alleged "property damage" under the Policy, coverage of the claim is precluded by the Policy's Pollution Exclusion, we affirm the judgment of the district court.

## BACKGROUND

Karon Smith owns a waste disposal facility in Texas used at times by Basic Energy. In 2004, Smith filed suit against Basic Energy in Texas state court, initially asserting claims of business disparagement, tortious interference with contract, negligence, and gross negligence, and seeking damages therefrom. In January 2005, Great Northern informed Basic Energy that it would defend Basic Energy against Smith's lawsuit subject to a reservation of rights.

Subsequently, Smith filed her Third Amended Petition ("TAP"), in March 2005. The TAP dropped the claim of business disparagement and added an allegation that Basic Energy had negligently delivered and disposed of ten to fifteen barrels of oil-based waste at Smith's disposal facility in 2002, during the coverage period of the Great Northern Policy. Smith's facility was not licensed to accept this particular type of waste, and Smith alleged that she had suffered substantial damage as a result of this disposal.

Shortly after the TAP was filed, Great Northern informed Basic Energy that it would continue defending Basic Energy, so long as the case went to trial as scheduled in April 2005. The Smith lawsuit was then continued to July 2005, and Great Northern sent a declination of coverage letter to Basic Energy on April 13, 2005. The letter informed Basic Energy that Great Northern was withdrawing its defense of the Smith suit effective April 18, 2005, on the basis

2

that there were no allegations in Smith's TAP against Basic Energy that potentially implicated coverage under the Great Northern Policy. Basic Energy thereafter began paying out of pocket for its defense of the Smith action.

Smith then filed a Fourth Amended Petition in June 2005. This fourth and final complaint retained the allegations of Basic Energy's negligent disposal of oil-based waste at the Smith disposal facility and asserted, for the first time, that such disposal caused her to sustain property damage. Basic Energy did not notify Great Northern of, nor forward, the Fourth Amended Complaint when it was filed, although it did both after trial had ended.

After trial in July 2005, the jury returned a verdict for Smith, finding that Basic Energy had committed negligence and awarding her approximately $1.2 million in damages. Those damages were for lost profits and legal fees resulting from a Texas Railroad Commission ("TRC") investigation of Smith's facility as a result of the oil-based waste being improperly disposed of at her facility.

The evidence produced at trial established that on June 24, 2002, during the Policy period, Basic Energy delivered and disposed of ten to fifteen barrels of oil-based waste at the Smith disposal facility, and that as a result Smith was subjected to a TRC investigation of her facility, during which she incurred legal fees and lost profits by being removed from certain customers' lists of approved disposal facilities.

Basic Energy then provided the fourth and final complaint and judgment to Great Northern to request a reconsideration of its denial of coverage and to request defense as Basic Energy appealed the verdict. Great Northern, by letter dated September 20, 2005, issued a final declination of coverage letter. Basic Energy accrued additional legal expenses after the final declination letter, primarily in appealing the judgment. Basic Energy eventually settled the lawsuit by Smith for a payment of $1 million.

In March 2006, Basic Energy sued Great Northern in Texas state court, claiming that Great Northern had violated its duty to defend and to indemnify, and that Basic Energy was entitled to 18% annual interest on its defense expenses accrued because of Great Northern's alleged wrongful denial of defense. Great Northern removed to federal district court. After an attempt to mediate the suit failed, the parties filed renewed cross-motions for summary judgment. In June 2008, the district court ruled from the bench that Basic Energy's motion was denied but that Great Northern's would be granted. Basic Energy timely appealed.

## DISCUSSION

### I. Standard of Review

This court reviews the grant of summary judgment *de novo*, applying the same legal standards as the district court. *Aubris Resources LP v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 483, 486 (5th Cir. 2009). Summary judgment will be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of demonstrating that there are no genuine issues of material fact in dispute. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 433 (5th Cir. 2005). However, if the non-movant does not present facts sufficient to support an essential element of his claim, summary judgment is appropriate. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *Harvill*, 433 F.3d at 433 (internal quotation omitted).

Where, as here, federal jurisdiction is based on diversity of citizenship, the federal courts apply the substantive law of the forum state. *Aubris Resources*, 566 F.3d at 486. Here, it is agreed that Texas law applies.

II. The Policy

The Policy section at issue provides:

Section I:   Coverages
Coverage A        Bodily Injury and Property Damage Liability

Insuring Agreement

1. We will pay those sums that the insured becomes legally obligated to pay as damages *because of* bodily injury or *property damage to which this insurance applies. . . .* This insurance applies only to bodily injury or property damage which occurs during the policy period. The bodily injury or property damage must be caused by an occurrence. . . . We will have the right and duty to defend any suit seeking those damages.

(emphasis added).

The Policy defines an "occurrence" to mean "an accident including continuous or repeated exposure to substantially the same general harmful conditions."[1]

"Property damage" is defined as:

a. Physical injury to tangible property, including all resulting loss of use that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the occurrence that caused it.

Furthermore, the Policy excludes coverage of property damage caused by pollution (the "Pollution Exclusion"), which states in relevant part:

---

[1]  Under Texas law, "[a]n 'occurrence' depends on the fortuitous nature of the event, that is, whether the damage was expected or intended from the standpoint of the insured." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 16 (Tex. 2007) (interpreting an identical definition of "occurrence").

This insurance does not apply to:

. . . .

6. a. Bodily Injury or Property Damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants.

. . .

(2) At or from premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste.

(3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Basic Energy argues that Great Northern had a duty to defend Basic Energy against Smith's suit because the TAP and later the Fourth Amended Complaint alleged losses from property damage. Basic Energy further asserts that Great Northen has a duty to indemnify it for the costs expended in defending itself from the Smith suit after Great Northern's denial of coverage and in settling the suit. Basic Energy contends that these duties were triggered because Smith's petitions included claims for losses based on property damage. Great Northern maintains that it properly discontinued defense because the TAP made no allegations covered by the Policy, but that even if they did, coverage is precluded in this case by the Pollution Exclusion.

III. The Pollution Exclusion Precludes Coverage

Under Texas law, insurance policies are interpreted by the same rules of interpretation that are applicable to contracts. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). "The contract should be 'considered as a whole' and 'each part of the contract should be given effect.'" *Aubris Resources*, 566 F.3d at

486 (quoting *Forbau*, 876 S.W.2d at 133). "Our primary concern is to ascertain the parties' true intent, as expressed in the language of the policy." *Id.* (citing *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)). "We cannot adopt a construction that renders any portion of a policy meaningless, useless, or inexplicable." *Id.* (quoting *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 (Tex. 2008)) (internal quotation marks omitted).

"If a provision has more than one reasonable interpretation, a court must interpret it in favor of the insured, provided that interpretation is not unreasonable, and even if the insurer's interpretation is *more* reasonable." *Aubris Resources*, 566 F.3d at 486 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)) (emphasis added). "In particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured." *Id.* (internal quotation marks omitted).

Under Texas's eight-corners rule, the duty to defend must be determined by comparing the terms of the insurance policy and the allegations in the third-party complaint. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 13 (Tex. 2007). "Resort to evidence outside the four corners of these two documents is generally prohibited." *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009). "The duty to defend does not depend upon the truth or falsity of the allegations; a plaintiff's factual allegations that potentially support a covered claim are all that is needed to invoke the insurer's duty to defend." *Id.* (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006) and *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).

The focus of the determination is on the facts alleged in the complaint, not the legal theories asserted, and "the label attached to the cause of action–whether it be in tort, contract, or warranty–does not determine the duty

to defend." *Lamar Homes, Inc.*, 242 S.W.3d at 13. "The insured bears the initial burden of showing that the claim against her is potentially within the insurance policy's scope of coverage." *See, e.g.*, *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001) (quoting *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 945 (Tex. 1988)). "[D]oubt as to whether or not the [factual] allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action . . . will be resolved in [the] insured's favor." *Harken*, 261 F.3d at 471 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merch. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)) (internal quotation marks omitted). However, it is plain that "[i]f a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994).

The insurer's duty to indemnify is distinct from, and narrower than, the duty to defend. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008). While the duty to defend is based solely on examining the eight corners of the operative complaint and the insurance policy, the duty to indemnify is controlled by "the facts actually established in the underlying suit." *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009).

Examining the Policy and the underlying third-party complaints, we conclude that there was no error in the district court granting summary judgment to Great Northern. Although we are doubtful that Smith's TAP made allegations that would trigger coverage for "property damage" under the Policy, we need not decide the issue because, even if it did, the Policy's Pollution Exclusion clearly precludes coverage.

Basic Energy's argument focuses on the allegations in Smith's TAP. Examining the TAP, it makes no direct statement of damage caused to Smith's

property.[2] Smith alleged that Basic Energy delivered and disposed of oil-based waste, identified as being among the wastes that Smith's permit of operation from Texas allowed (when in fact it was waste that Smith was not permitted to accept), at her property in June 2002, and that she sustained damages as a result. As a result, the TRC conducted an investigation of Smith, which Smith expended resources defending, and Smith lost business revenue during the investigation when waste haulers took their disposal business elsewhere. Basic Energy argues that the damages that are alleged, primarily the cost of defending the TRC investigation and loss of business, are consequential damages of property damage caused by the waste that Basic Energy caused to be disposed at Smith's facility. But accepting Basic Energy's argument as to why the insuring clause should apply means that the claimed property damage was caused by pollutants–barrels of oil-based waste.

Although Basic Energy argues that the Pollution Exclusion may reasonably be read to exclude only the damage to physical or tangible property, thus allowing coverage for the consequential damages that are at issue, we are not persuaded that such a reading of the provision is a reasonable one. Under the Policy, coverage for "property damage arising out of" pollution is excluded

---

[2] The TAP refers to the harm suffered by Smith as follows:

Smith lost substantial business . . . . Smith also lost other business opportunities as a result . . . .
Smith incurred substantial costs defending itself in front of the Railroad Commission as a result of Defendant's acts. . . .
[Smith] was taken off of [one hauler]'s approved list and incurred actual damages or loss in lost business by not being able to accept waste fluids from [the hauler]. . . .
Plaintiff sues for actual damages and lost business, exemplary damages, interest, court costs, attorneys fees as well as the costs to defend its good name with the administrative investigations. . . .
This negligence was the proximate cause for [Smith]'s lost revenue, profits and costs defending itself. These losses occurred due to the El Paso business termination as well as lost opportunities with other users of disposal services such as Smith's.

from coverage. The Texas Supreme Court has held that "'arise out of' means that there is simply a causal connection or relation, which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." *Utica Nat'l Ins. Co. of Texas v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (internal citation omitted) (discussing broader reach of "arising out of" language in policy in contrast with narrower scope of phrase "due to" used in exclusion). Thus, the damages that Basic Energy argues are covered by the Policy "aris[e] out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." Further, if "property damage" includes consequential damages, as Basic Energy argues, for purposes of the general insuring provision, there is nothing in the Policy nor in interpretative principles to suggest that the exact phrase has a different meaning when used in the Pollution Exclusion. *See Evanston Ins. Co.*, 256 S.W.3d at 668 ("We cannot adopt a construction that renders any portion of a policy meaningless, useless, or inexplicable."). Under the Pollution Exclusion, therefore, the exclusion from coverage of property damage caused by pollution also excludes the consequential damages of property damage caused by pollution.

CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.