**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 1, 2013

No. 12-30230

Lyle W. Cayce
Clerk

IN RE:  DEEPWATER HORIZON

-----------------------------------------------------

RANGER INSURANCE, LIMITED,

Plaintiff - Appellee

v.

TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED;
TRANSOCEAN HOLDINGS, L.L.C.; TRANSOCEAN DEEPWATER,
INCORPORATED; TRITON ASSET LEASING GMBH,

Intervenor Plaintiffs - Appellees

v.

BP P.L.C.; BP EXPLORATION & PRODUCTION, INCORPORATED; BP
AMERICAN PRODUCTION COMPANY; BP CORPORATION NORTH
AMERICA, INCORPORATED; BP COMPANY NORTH AMERICA,
INCORPORATED; BP PRODUCTS NORTH AMERICA, INCORPORATED;
BP AMERICA, INCORPORATED; BP HOLDINGS NORTH AMERICA,
LIMITED,

Defendants - Intervenor Defendants - Appellants

-----------------------------------------------------

CERTAIN UNDERWRITERS AT LLOYD'S LONDON,

Plaintiff - Appellee

No. 12-30230

TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED; TRANSOCEAN HOLDINGS, L.L.C.; TRANSOCEAN DEEPWATER, INCORPORATED; TRITON ASSET LEASING GMBH,

Intervenor Plaintiffs - Appellees

v.

BP P.L.C.; BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICAN PRODUCTION COMPANY; BP CORPORATION NORTH AMERICA, INCORPORATED; BP COMPANY NORTH AMERICA, INCORPORATED; BP PRODUCTS NORTH AMERICA, INCORPORATED; BP AMERICA, INCORPORATED; BP HOLDINGS NORTH AMERICA, LIMITED,

Defendants - Intervenor Defendants - Appellants

------

Appeal from the United States District Court
for the Eastern District of Louisiana

------

Before JOLLY, BENAVIDES, and HIGGINSON, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal presents only one of the many disputes that have arisen and will arise from the explosion and sinking of Transocean's *Deepwater Horizon* in April 2010. Today we address the obligations of Transocean's primary and excess-liability insurers to cover BP's pollution-related liabilities deriving from the ensuing oil spill in the Gulf of Mexico. Applying Texas law, especially as clarified since the district court's decision, we find that the umbrella insurance policy—not the indemnity provisions of Transocean's and BP's contract—controls the extent to which BP is covered for its operations under the Drilling Contract. Because we find this policy imposes no relevant limitations upon the extent to which BP is covered, we REVERSE the judgment of the district court and

2

No. 12-30230

REMAND the case for entry of an appropriate judgment in accordance with this opinion.

## I.

Transocean Holdings, Inc. ("Transocean") owned the *Deepwater Horizon*, a semi-submersible, mobile offshore drilling unit. In April 2010, the *Deepwater Horizon* sank into the Gulf of Mexico after burning for two days following an onboard explosion ("Incident" or "*Deepwater Horizon* Incident"). At the time of the Incident, the *Deepwater Horizon* was engaged in exploratory drilling activities at the Macondo Well under a Drilling Contract between the Appellant BP America Production Company's (together with its affiliates, "BP") predecessor and Transocean's predecessor. This Contract required Transocean to maintain certain minimum insurance coverages for the benefit of BP. The extent to which these policies covered BP's pollution-related liabilities arising from the *Deepwater Horizon* Incident is the subject of this appeal.

**The Insurance Policies**

Transocean held insurance policies with a primary liability insurer, Ranger Insurance Ltd. ("Ranger"), as well as several excess liability insurers led by London market syndicates ("Excess Insurers;" together with Ranger, "Insurers"). Transocean's insurance policy with Ranger provided at least $50 million of general liability coverage, and its policies with the Excess Insurers formed four layers of excess coverage directly above the Ranger Policy that provided at least $700 million of additional general liability coverage. The Ranger and Excess Policies contain materially identical provisions.[1] The Policy terms that are important to this case are "Insured" and "Insured Contract." The Policies define "Insured" as including the Named Insured, other parties, and

---

[1] As the district court noted (and the Insurers have not disputed), this similarity allows the court to treat all of the Insurers as one for purposes of analysis in this case.

No. 12-30230

> (c) any person or entity to whom the "Insured" is obliged by any oral or written "Insured Contract" (including contracts which are in agreement but have not been formally concluded in writing) entered into before any relevant "Occurrence", to provide insurance such as is afforded by this Policy . . . .

The Policies define "Insured Contract" as follows:

> The words "Insured Contract", whenever used in this Policy, shall mean any written or oral contract or agreement entered into by the "Insured" (including contracts which are in agreement but have not been formally concluded in writing) and pertaining to business under which the "Insured" assumes the tort liability of another party to pay for "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" to a "Third Party" or organization.  Tort Liability means a liability that would be imposed by law in the absence of any contract or agreement.[2]

**The Drilling Contract**

The Drilling Contract defines BP's and Transocean's obligations to one another, separately identifying the liabilities each party assumes.  Article 20 of the Contract is a singular provision that imposes upon Transocean an insurance requirement:

> 20.1 <u>INSURANCE</u>
> Without limiting the indemnity obligations or liabilities of CONTRACTOR [Transocean] or its insurer, at all times during the term of this CONTRACT, CONTRACTOR **shall maintain insurance covering the operations to be performed under this CONTRACT as set forth in Exhibit C**.

(Emphasis added.)   Exhibit C to the Drilling Contract is titled "Insurance Requirements" and establishes the types and minimum level of coverage that

---

[2] The Policies contain further provisions addressing other insureds.  Endorsement 1 provides a general condition that additional insureds are automatically included where required by written contract.  Condition D.1 to Section I coverage limits the coverage of additional insureds: Transocean has the privilege to name additional insureds only to the extent as is required under contract or agreement.

4

No. 12-30230

Transocean is obligated to maintain. This Exhibit provides that Transocean shall carry all insurance at its own expense and that the policies "shall be endorsed to provide that there will be no recourse against [BP] for payment of premium." Further, Exhibit C states:

> [BP], its subsidiaries and affiliated companies, co-owners, and joint venturers, if any, and their employees, officers and agents **shall be named as additional insureds in each of [Transocean's] policies, except Workers' Compensation for liabilities assumed by [Transocean] under the terms of this Contract**.

(Emphasis added.)

**The Procedural History**

Following the Incident, BP notified the Insurers of its *Deepwater Horizon*-related losses. The Excess Insurers and Ranger each filed a one-count declaratory judgment action against BP.[3] The Insurers' complaints are substantively identical—both request a declaration that the Insurers have "no additional-insured obligation to BP with respect to pollution claims against BP for oil emanating from BP's well" as a result of the *Deepwater Horizon* Incident. The Insurers acknowledge that "the [D]rilling [C]ontract requires additional insured protection in favor of certain BP entities." Thus, all parties concede that the Drilling Contract is an "insured contract" under the policies and that the policies provide some insurance coverage to BP as an additional insured. The issue in contention is the scope of BP's insurance coverage.

In July 2011, BP moved for judgment on the pleadings, under Rule 12(c) of the Federal Rules of Civil Procedure, against the Insurers. Relying upon

---

[3] In February 2011, the Judicial Panel on Multidistrict Litigation transferred both cases to the United States District Court for the Eastern District of Louisiana for coordinated pretrial proceedings with the other *Deepwater Horizon*-related litigation pending in that court. In March 2011, Transocean moved for leave to intervene in the consolidated actions, which motion the court granted.

No. 12-30230

Texas and Fifth Circuit precedent as developed in *Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660 (Tex. 2008), and in *Aubris Resources LP v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 483 (5th Cir. 2009), BP argued (1) it was an "additional insured" under the insurance policies at issue and (2) the insurance policies alone—and not the indemnities detailed in the Drilling Contract—govern the scope of BP's coverage rights as an "additional insured."[4]

The district court found *ATOFINA* and *Aubris* are distinguishable from the case at hand and denied BP's Rule 12(c) motion in November 2011. In particular, the court read Transocean's insurance obligation in Exhibit C to be to name BP as an "additional insured[] in each of [Transocean's] policies . . . for liabilities assumed by [Transocean] under the terms of the contract." That is, the district court found BP's proffered reading of this clause unreasonable, and read the clause as if there were a comma following the phrase "except Workers' Compensation;" this reading rendered those three words their own discrete carve out from liability. Reasoning further that this interpretation required Transocean to name BP as an insured only for liabilities Transocean explicitly assumed under the contract, the court then looked to Article 24 of the Drilling Contract to conclude that BP was not covered under Transocean's policy for the pollution-related liabilities deriving from the *Deepwater Horizon* Incident (as the spill originated below the surface of the water).[5]

---

[4] BP argues this motion did not require a determination of any rights or obligations of BP or Transocean to one another under any provisions of the Drilling Contract. We agree.

[5] With respect to pollution-related liabilities, Article 24.1 of the Contract provides:
> CONTRACTOR [Transocean] shall assume full responsibility for and shall protect, release, defend, indemnify, and hold COMPANY [BP] and its joint owners harmless from and against any loss, damage, expense, claim, fine, penalty, demand, or liability **for pollution or contamination**, including control and removal thereof, **originating on or above the surface of the land or water**, from spills, leaks, or

No. 12-30230

Following further submissions of the parties, the district court then entered a partial final judgment on the Insurers' complaints under Rule 54(b). Effective March 1, 2012, the court held "by its terms, the Court's Order and Reasons [on BP's motion for judgment on the pleadings] not only denied BP's motion but also granted judgment on the pleadings against [BP] and in favor of the Plaintiff Insurers on the Plaintiff Insurers' complaints."[6]   BP timely appealed.

## II.

We review *de novo* a district court's grant of judgment on the pleadings under Rule 12(c). *United States v. Renda Marine, Inc.*, 667 F.3d 651, 654 (5th Cir. 2012). The standard for dismissal under Rule 12(c) is the same as that for dismissal under Rule 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). To survive a Rule 12(b)(6) motion, the plaintiff must plead facts sufficient "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

> discharges of fuels, lubricants, motor oils, pipe dope, paints, solvents, ballast, air emissions, bilge sludge, garbage, or any other liquid or solid whatsoever in possession and control of CONTRACTOR . . . .

(Emphasis added.)  Article 24.2 then provides:

> COMPANY [BP] shall assume full responsibility for and shall protect, release, defend, indemnify, and hold CONTRACTOR [Transocean] harmless from and against any loss, damage, expense, claim, fine, penalty, demand, or liability **for pollution or contamination**, including control and removal thereof, **arising out of or connected with operations under this CONTRACT hereunder and not assumed by CONTRACTOR in Article 24.1 above** . . . .

(Emphasis added.)

[6] In its brief, BP notes that this partial final judgment was entered in favor of the Insurers "and Transocean" and argues that Transocean is not a proper party to this order. BP's Rule 12(c) motion was directed only to the Insurer's complaints and claims—not against Transocean.

No. 12-30230

We similarly review issues of contract interpretation *de novo*. *One Beacon Ins. Co. v. Crowley Marine Servs. Inc.*, 648 F.3d 258, 262 (5th Cir. 2011). The parties agree that Texas law governs interpretation of the Policies, under the Policies' choice-of-law provisions. "Under Texas law, the same general rules apply to the interpretation of contracts and insurance policies." *Aubris*, 566 F.3d at 486 (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). Courts should consider contracts "as a whole," affording "each part of the contract . . . effect." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). Discerning the parties' true intent, as expressed in the language of the policy, is the court's primary concern. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). And the court may not adopt a construction that renders any portion of a policy meaningless, useless, or inexplicable. *ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co.*, 185 S.W.3d 440, 444 (Tex. 2005).

If an insurance coverage provision is susceptible to more than one reasonable interpretation, the court must interpret that provision in favor of the insured, so long as that interpretation is reasonable. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). The court must do so even if the insurer's interpretation is *more* reasonable than the insured's—"[i]n particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured," *id.*, and "[a]n intent to exclude coverage must be expressed in clear and unambiguous language." *ATOFINA*, 256 S.W.3d at 668, 668 n.27 (citing *Hudson Energy Co.*, 811 S.W.2d at 555); *see also Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 577 (5th Cir. 2009) ("If . . . ambiguity is found, the contractual language will be 'liberally' construed in favor of the insured." (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987))).

8

No. 12-30230

III.

Under Texas law, to discern "whether a commercial umbrella insurance policy that was purchased to secure the insured's indemnity obligation in a service contract with a third party also provides direct liability coverage for the third party," we look to the "terms of the umbrella insurance policy itself," instead of looking to the indemnity agreement in the underlying service contract. *ATOFINA*, 256 S.W.3d at 662, 664; *see also Aubris*, 566 F.3d at 488-89. We apply this analysis so long as the indemnity agreement and the insurance coverage provision are separate and independent. *ATOFINA*, 256 S.W.3d at 664 n.5 (citing *Getty Oil Co. v. Ins. of N. Am.*, 845 S.W.2d 794, 804 (Tex. 1992); *Aubris*, 566 F.3d at 489. We examine each step of the analysis in turn.

A.

First, we ask whether the umbrella policy between the Insurers and Transocean itself limits coverage for any additional insureds, including BP. *ATOFINA* is instructive, as its facts significantly parallel the facts of the case now before us. 256 S.W.3d 660. ATOFINA owned an oil refinery at which it hired Triple S to perform maintenance functions. *Id.* at 662. ATOFINA and Triple S entered a services contract which stipulated that ATOFINA was to be named an additional insured in each of Triple S's policies. *Id.* at 663. Specifically, this provision stated:

> [ATOFINA], its parents, subsidiaries and affiliated companies, and their respective employees, officers and agents shall be named as additional insured in each of [Triple S's] policies, except Workers' Compensation; however, such extension of coverage shall not apply with respect to any obligations for which [ATOFINA] has specifically agreed to indemnify [Triple S].[7]

---

[7] Petitioner's Br. on the Merits, *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660 (Tex. 2008) (No. 03-0647), 2004 WL 1047377, at *4.

No. 12-30230

After a Triple S employee drowned while servicing the ATOFINA refinery, his estate sued ATOFINA and Triple S for wrongful death. *Id.* at 663. Triple S's insurer, Evanston, and ATOFINA disagreed over who was required to pay for the litigation; ATOFINA contended it was an additional insured and thus covered, while Evanston argued ATOFINA's agreement to indemnify Triple S for ATOFINA's sole negligence precluded coverage. *Id.*

The Texas Supreme Court began by noting that ATOFINA sought coverage from Evanston on the basis that it was Triple S's additional insured—and had not sought indemnity directly from Triple S. *Id.* at 663-64. The court next looked to Section III.B.6 of the policy, which defined who is an insured as

> A person or organization for whom you have agreed to provide insurance as is afforded by this policy; but that person or organization is an insured only with respect to operations performed by you or on your behalf, or facilities owned or used by you.

*Id.* at 664. Because, by its own terms, this Section covered ATOFINA "with respect to operations performed by" Triple S, the court found this Section provided ATOFINA direct coverage even for its sole negligence. *Id.* at 667. Moreover, the court stated that "had the parties intended to insure ATOFINA for vicarious liability only, 'language clearly embodying that intention was available.'" *Id.* at 666 (citing *McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251, 255 (10th Cir. 1993)).

This Court subsequently applied *ATOFINA*'s teachings in *Aubris*. 566 F.3d 483. Again, this case involved a particularly analogous set of facts: United hired J&R Valley to service its oilfields pursuant to a services contract that required J&R Valley to name United as an additional insured in its commercial general liability policy. *Id.* at 485. The agreement further contained a general indemnity provision requiring United to indemnify J&R Valley for causes of

10

action deriving from United's own negligence. *Id.* at 485-86. The court noted that "[o]ur starting point is the insurance policy itself." *Id.* at 487. This policy defined an additional insured as

> Any person or organization that you agree in a written contract for insurance to add as an additional protected person under this agreement is also a protected person for the following **if that written contract for insurance specifically requires such coverages** for that person or organization[.]

*Id.* (emphasis in original). Because this definition referred to a "written contract for insurance," the court then looked to the additional insured provision in the services agreement to determine whether coverage was required. *Id.* That provision stated, in relevant part:

> UNITED . . . shall be named as additional insureds in each of [J&R Valley's] policies, except Workers' Compensation; **however, such extension of coverage shall not apply with respect to obligations for which UNITED has specifically agreed to indemnify [J&R Valley]**.

*Id.* (emphasis in original). On the basis of this term, J&R Valley's insurer argued the general indemnity provision of the services agreement prevented United from being covered. *Id.*

The court disagreed, stating, "[w]e take from [*ATOFINA*] that in determining whether there is coverage, a court looks only to the additional insured provision itself; that indemnity is a separate, and later arising, question from coverage." *Id.* at 488. Again, the court noted that United sought coverage from J&R Valley's insurer and not indemnity from J&R Valley itself—just as ATOFINA sought coverage from Evanston and not indemnity from Triple S. *Id.* at 489.

The court held:

No. 12-30230

[I]t is not material to the [*ATOFINA*] rule whether the additional insured provision is finally determined in the policy or with the aid of the parties' service contract. The separate indemnity provision is not applied to limit the scope of coverage. Indeed, on this point the Texas Supreme Court could not have been clearer:

We have noted that where an additional insured provision is separate from and additional to an indemnity provision, the scope of the insurance requirement is not limited by the indemnity clause.

*Id.* at 489 (quoting *ATOFINA*, 256 S.W.3d at 664 (citing *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 804 (Tex. 1992))).

Most recently, and subsequent to the district court's ruling, the Texas Court of Appeals addressed this same question of coverage in *Pasadena Refining System, Inc. v. McCraven*, Nos. 14-10-00837-CV, 14-10-00860-CV, 2012 WL 1693697 (Tex. App. May 15, 2012). The umbrella policy there provided a broad definition of "additional insured,"[8] and the services agreement required the

---

[8] 2012 WL 1693697, at *14-15:

Any person or organization . . . for whom the named insured . . . has specifically agreed by written contract to procure bodily injury . . . insurance, provided that:

    a. This insurance applies only to the type of coverage which is otherwise provided by this policy and which the named insured has agreed to provide by contract, but in no event shall the coverage exceed, in type or amount, the coverage otherwise provided by this policy;

    b. The amount of insurance is limited to the minimum amount required by such written contract, or to the limits of liability provided by this policy, whichever is lower;

    c. The insurance applies only with respect to liability arising out of the work done by or on behalf of the named insured under such written contract; and

    d. This insurance shall apply as primary insurance with regard to the additional insured for whom the named insured has agreed by written contract to provide insurance on a primary basis, and in such cases, any other insurance or self insurance available to the additional insured shall be excess to, and not contributory with, the insurance afforded by this policy to that additional insured. However, if the contract does not specifically require

12

No. 12-30230

> COMPANY be named as an additional insured in all such certificates, except insurance providing protection against worker's or workmen's compensation claims, to the extent of the coverage required and only in the minimum amount required by contract, and only with respect to liability arising out of work done by or on behalf of the named insured, and only to the extent COMPANY is indemnified by CONTRACTOR under the terms of the contract.

*Id.* at \*14.  The insurer argued that this clause in the services agreement expressed the parties' clear intent to limit additional insured coverage to the indemnities listed in that agreement.  *Id.* at \*16.  The court, however, applied *ATOFINA* and *Shell Chemical L.P. v. Discover Property & Casualty Insurance Co.*, CIV. A. No. H-09-2583, 2010 WL 1338068 (S.D. Tex. Mar. 29, 2010), and concluded that only the *policy* could limit the scope of additional insured status.  2012 WL 1693697, at \*15-16.  Looking to the "unambiguous [umbrella] policy, which neither contains a limitation on additional insured coverage concerning indemnity under the [services] agreement nor incorporates any such limitation," the court held the company was an additional insured entitled to coverage as a matter of law.  2012 WL 1693697, at \*14, \*16-17.

This case law makes clear to us that only the umbrella policy itself may establish limits upon the extent to which an additional insured is covered in situations such as the one now before us.  As an initial matter we note that here, as in *ATOFINA* and *Aubris*, BP is not seeking indemnity from Transocean, but is seeking coverage from the Insurers.  The umbrella policy in this case defines an additional insured as "any person or entity to whom the 'Insured is obliged

---

> that this insurance be primary, this insurance shall be excess over and not contributory with any other valid and collectible insurance or self insurance available to the additional insured whether such other insurance or self insurance is primary, excess, or contingent, or on any other basis.

No. 12-30230

by any oral or written 'Insurance Contract' . . . to provide insurance such as is afforded by this policy." And it defines "Insurance Contract" as "any written or oral contract or agreement entered into by the 'Insured' . . . and pertaining to business under which the 'Insured' assumes the tort liability of another party to pay for 'Bodily Injury', 'Property Damage', 'Personal Injury' or 'Advertising Injury' to a 'Third Party' or organization." This language is very similar to the language in the umbrella policies in *ATOFINA*, *Aubris*, and *Pasadena Refining*—indeed, we can find no principled distinction between the policy language in these three cases and in the case now at hand.[9] Just as the policies in these three earlier cases did not limit coverage, so here the policy itself does not contain any limitation on additional insured coverage nor incorporate any limits from the underlying Drilling Contract.

The Insurers, however, argue that the additional insured provision in the Drilling Contract specifically limits BP's status as an additional insured to circumstances involving those liabilities Transocean specifically assumes under the Contract. This argument is simply not persuasive given how Texas law has developed. The language to which the Insurers cite for support is virtually identical to the additional insured provision contained in the services agreement in *ATOFINA*; additionally, it is very similar to the language in both *Aubris* and *Pasadena Refining*. To make the parallels clear, we note again that the agreement in *ATOFINA* provided that

> [ATOFINA], its parents, subsidiaries and affiliated companies, and their respective employees, officers and

---

[9] The district court distinguished the current case from *ATOFINA* by noting that the policy in that case, in defining "additional insured," did not specifically refer to an underlying services contract. This is a true, but ultimately an unpersuasive distinction. First, that policy did include in its additional insured definition language referencing entities "for whom you have agreed to provide insurance as is afforded by this policy." Second, the policies in both *Aubris* and *Pasadena Refining* specifically reference an underlying contract requiring insurance coverage in their definitions of additional insureds, yet in each of these cases the respective courts found this reference insufficient to constitute a limit on coverage.

No. 12-30230

> agents shall be named as additional insured in each of [Triple S's] policies, except Workers' Compensation; however, such extension of coverage shall not apply with respect to any obligations for which [ATOFINA] has specifically agreed to indemnify [Triple S].

And the Drilling Contract here requires:

> [BP], its subsidiaries and affiliated companies, co-owners, and joint venturers, if any, and their employees, officers and agents shall be named as additional insureds in each of [Transocean's] policies, except Workers' Compensation for liabilities assumed by [Transocean] under the terms of this Contract.

While the parties ardently disagree as to how this clause in the Drilling Contract should be interpreted, we find, in the light of *ATOFINA*, that we need not now decide this contentious issue. Even if the clause is construed as the Insurers desire, that is, even if it is understood to mean that BP is an additional insured under Transocean's policies *only* for liabilities Transocean specifically assumed in the Drilling Contract, the outcome is a clause materially identical to the additional insured provision in *ATOFINA*—and the Texas Supreme Court found that this clause was insufficient to limit coverage. Despite the services contract's language, the *ATOFINA* court found the umbrella policy controlled coverage. Accordingly, we find we are bound to look only to the policy itself to determine whether BP is covered in the current case. Because the umbrella policy's provision describing an additional insured is substantially similar to the pertinent policy provisions in *ATOFINA*, *Aubris*, and *Pasadena Refining*, we hold that there is no relevant limitation to BP's coverage under the policy as an additional insured, that is, so long as the insurance provision and the indemnities clauses in the Drilling Contract are separate and independent. *See ATOFINA*, 256 S.W.3d at 664 n.5, 670; *Getty Oil*, 845 S.W.2d at 804.

No. 12-30230

B.

And now that is the question we must next resolve:  Whether the Drilling Contract's additional insured provision is separate from and additional to the indemnity provisions.  *Getty Oil*, 845 S.W.2d at 804.  Notably, in *ATOFINA*, *Aubris*, and *Pasadena Refining*, the respective courts found the additional insured provisions were independent of the indemnity provisions.  *ATOFINA* considered two cases in reaching this conclusion.  First, it examined *Fireman's Fund v. Commercial Standard Ins. Co.*, 490 S.W.2d 818 (Tex. 1972), in which the Texas Supreme Court held GM was not entitled to indemnity because the contract did not extend indemnity to GM's negligence.  In that case, GM had contracted with Sam P. Wallace Co., Inc. ("Wallace") to perform work on GM's Arlington assembly plant, and, in the contract, Wallace agreed to indemnify GM for any losses arising from Wallace's own negligence and to obtain liability insurance to satisfy that obligation.  *Id.* at 820.  The *ATOFINA* court distinguished that case by noting that in *Fireman's Fund*, GM was not an additional insured under Wallace's liability policy—while Wallace was required to obtain insurance to cover its liabilities, it was not further required to name GM as an additional insured in those policies.  256 S.W.3d at 669-70.  As described below, this same distinction applies to the case now before us.

Second, the *ATOFINA* court looked to *Getty Oil*, 845 S.W.2d 794.  Getty contracted with NL Industries to purchase chemicals, and the services contract included an indemnity provision as well as a broad insurance requirement providing, in paragraph 1, that "[a]ll insurance coverages carried by [NL], whether or not required hereby, shall extend to and protect [Getty.]"  *Id.* at 797. The *Getty Oil* court found this contract was "significantly different from that in *Fireman's Fund*."  *Id.* at 804.  It reasoned that, while the indemnity provision in paragraphs 3-4 of the relevant contract was supported by an insurance

16

provision, this provision was "separate from and additional to the additional insured provision in paragraphs 1-2." *Id.*

The *ATOFINA* court applied the reasoning in these cases to find that, "[a]lthough the service contract in this case does not include an insurance requirement quite as clear as the one in *Getty*, it is clear enough—it requires that ATOFINA 'shall be named as additional insured in each of [Triple S's] policies.'" 256 S.W.3d at 670 (alteration in original). The court then concluded it was

> unmistakable that the agreement in this case to extend *direct* insured status to ATOFINA as an additional insured is separate and independent from ATOFINA's agreement to forego *contractual* indemnity for its own negligence. We disapprove the view that this kind of additional insured requirement fails to establish a separate and independent obligation for insuring liability.

*Id.* (emphasis in original).

Accordingly, to render an additional insured provision separate from and additional to an indemnity provision, Texas law only requires the additional insured provision be a discrete requirement. As evidenced in *Getty Oil* and *ATOFINA*, it need not be an entirely separate provision of the contract, and its independent status is not altered merely by the fact that the contract also includes a provision requiring the relevant party to obtain insurance to cover its liabilities under the contract.

Here, as the Insurers note, one clause of Exhibit C (describing Transocean's insurance obligations) requires Transocean to obtain coverage for its contractual liabilities,[10] while another provision simply requires Transocean

---

[10] *See* Exhibit C, ¶ 1.c:
  1. The insurance required to be carried by [Transocean] under this Contract is as follows:
  . . .

No. 12-30230

to name BP as an additional insured.[11]  This setup is similar to the contract in *Getty Oil*, which imposed a requirement that NL obtain insurance for its contractual liabilities in paragraphs 3-4, while requiring Getty be named an additional insured in paragraphs 1-2.  Moreover, the additional insured provision here is nearly identical to the additional insured provision in *ATOFINA*.  Accordingly, we hold, under Texas case law, it is "unmistakable" that the provision in the Drilling Contract extending direct insured status to BP is separate and independent from BP's agreement to forego contractual indemnity in various other circumstances.  *See ATOFINA*, 256 S.W.3d at 670.

## IV.

Texas law compels us to interpret insurance coverage provisions in favor of the insured, so long as that interpretation is reasonable—and even if the insurer's proffered interpretation denying coverage is more reasonable.  *Id.* at 668, 668 n.27; *Hudson Energy Co.*, 811 S.W.2d at 555.  Texas law further establishes that "'where an additional insured provision is separate from and additional to an indemnity provision, the scope of the insurance requirement is not limited by the indemnity claims.'" *Pasadena Refining*, 2012 WL 1693697, at *17 (quoting *ATOFINA*, 256 S.W.3d at 664 n.5); *see also Aubris*, 566 F.3d at 488-89.  Accordingly, we conclude:  Because we find the umbrella policies between the Insurers and Transocean do not impose any relevant limitation upon the extent to which BP is an additional insured, and because the additional insured

---

c.  Comprehensive General Liability Insurance, **including contractual liability insuring the indemnity agreement as set forth in the Contract** and products-completed operations coverage with a combined single limit of not less than $10,000,000 covering bodily injury, sickness, death and property damage.

(Emphasis added.)

[11] Exhibit C, ¶ 3: "[BP] . . . shall be named as additional insureds in each of [Transocean's] policies, except Workers' Compensation for liabilities assumed by [Transocean] under the terms of this Contract."

18

No. 12-30230

provision in the Drilling Contract is separate from and additional to the indemnity provisions therein, we find BP is entitled to coverage under each of Transocean's policies as an additional insured as a matter of law. We reverse the judgment of the district court and remand the case with instructions to enter the appropriate judgment consistent with this opinion.

REVERSED and REMANDED for entry of judgment.