**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 29, 2013

No. 12-30230

Lyle W. Cayce
Clerk

IN RE:  DEEPWATER HORIZON

\------------------------------------------------------

RANGER INSURANCE, LIMITED,

Plaintiff - Appellee

v.

TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED;
TRANSOCEAN HOLDINGS, L.L.C.; TRANSOCEAN DEEPWATER,
INCORPORATED; TRITON ASSET LEASING GMBH,

Intervenor Plaintiffs - Appellees

v.

BP P.L.C.; BP EXPLORATION & PRODUCTION, INCORPORATED; BP
AMERICAN PRODUCTION COMPANY; BP CORPORATION NORTH
AMERICA, INCORPORATED; BP COMPANY NORTH AMERICA,
INCORPORATED; BP PRODUCTS NORTH AMERICA, INCORPORATED;
BP AMERICA, INCORPORATED; BP HOLDINGS NORTH AMERICA,
LIMITED,

Defendants - Intervenor Defendants - Appellants

\------------------------------------------------------

CERTAIN UNDERWRITERS AT LLOYD'S LONDON,

Plaintiff - Appellee

v.

No. 12-30230

TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED; TRANSOCEAN HOLDINGS, L.L.C.; TRANSOCEAN DEEPWATER, INCORPORATED; TRITON ASSET LEASING GMBH,

Intervenor Plaintiffs - Appellees

v.

BP P.L.C.; BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICAN PRODUCTION COMPANY; BP CORPORATION NORTH AMERICA, INCORPORATED; BP COMPANY NORTH AMERICA, INCORPORATED; BP PRODUCTS NORTH AMERICA, INCORPORATED; BP AMERICA, INCORPORATED; BP HOLDINGS NORTH AMERICA, LIMITED,

Defendants - Intervenor Defendants - Appellants

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

Before JOLLY, BENAVIDES, and HIGGINSON, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The original opinion in this case was filed on March 1, 2013.[1] Because this case involves important and determinative questions of Texas law as to which there is no controlling Texas Supreme Court precedent, the panel, upon the petition for rehearing, unanimously withdraws the previous opinion and substitutes the following certified questions to the Supreme Court of Texas.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS, PURSUANT TO THE TEXAS CONSTITUTION ART. 5 § 3-C AND TEXAS RULE OF APPELLATE PROCEDURE 58.1.

---

[1] *In re Deepwater Horizon*, 710 F.3d 338 (5th Cir. 2013).

2

No. 12-30230

TO THE SUPREME COURT OF TEXAS AND THE HONORABLE JUSTICES THEREOF:

### I. Style of the Case: Parties and Counsel

The style of the case is In re: Deepwater Horizon: Ranger Insurance, Limited, Plaintiff–Appellee v. Transocean Offshore Deepwater Drilling, Incorporated; Transocean Holdings, L.L.C.; Transocean Deepwater, Incorporated; Triton Asset Leasing GMBH, Intervenor Plaintiffs–Appellees v. BP P.L.C.; BP Exploration & Production, Incorporated; BP American Production Company; BP Corporation North America, Incorporated; BP Company North America, Incorporated; BP Products North America, Incorporated; BP America, Incorporated; BP Holdings North America, Limited Defendants–Intervenor Defendants–Appellants; Certain Underwriters at Lloyd's London, Plaintiff–Appellee, Transocean Offshore Deepwater Drilling, Incorporated; Transocean Holdings, L.L.C.; Transocean Deepwater, Incorporated; Triton Asset Leasing GMBH, Intervenor Plaintiffs–Appellees v. BP P.L.C.; BP Exploration & Production, Incorporated; BP America Production Company; BP Corporation North America, Incorporated; BP Company North America, Incorporated; BP Products North America, Incorporated; BP America, Incorporated; BP Holdings North America, Limited, Defendants–Intervenor Defendants–Appellants. This is Case No. 12-30230, in the United States Court of Appeals for the Fifth Circuit, on appeal from the judgment of the United States District Court for the Eastern District of Louisiana.  Federal jurisdiction is premised upon 28 U.S.C. § 1333.

The names of all the parties to the case, each of whom is represented by counsel, and the respective names, addresses, and telephone numbers of their counsel, are as follows:

- Ranger Insurance, Limited, plaintiff in the district court and appellee in this court, represented by Michael John Maloney of Maloney, Martin &

No. 12-30230

Associates, Suite 100, 3401 Allen Parkway, Houston, TX 77019-0000, Tel. 713-759-1600;

- Transocean Offshore Deepwater Drilling, Incorporated; Transocean Holdings, L.L.C.; Transocean Deepwater, Incorporated; and Triton Asset Leasing GMBH, intervenor–plaintiffs in the district court and appellees in this court, represented by Steven Lynn Roberts, of Sutherland Asbill & Brennan, L.L.P., Suite 3700, 1001 Fannin Street, Houston, TX 77002-6760, Tel. 713-470-6192;

- BP, P.L.C.; BP Exploration & Production, Incorporated; BP American Production Company; BP Corporation North America, Incorporated; BP Company North America, Incorporated; BP Products North America, Incorporated; BP America, Incorporated; BP Holdings North America Limited, defendants and defendant-intervenors in the district court and appellants in this court, represented by David B. Goodwin of Covington & Burling, L.L.P., 35th Floor, 1 Front Street, San Francisco, CA 94111-5356, Tel. 415-591-6000; and

- Certain Underwriters at Lloyds London, plaintiff in the district court and appellee in this court, represented by Richard N. Dicharry of Phelps Dunbar, L.L.P., Suite 2000, 365 Canal Street, 1 Canal Place, New Orleans, LA 70130, Tel. 504-556-1311.

## II. Statement of the Case

Transocean Holdings, Inc. ("Transocean") owned the *Deepwater Horizon*, a semi-submersible, mobile offshore drilling unit. In April 2010, the *Deepwater Horizon* sank into the Gulf of Mexico after burning for two days following an onboard explosion ("Incident" or "*Deepwater Horizon* Incident"). At the time of the Incident, the *Deepwater Horizon* was engaged in exploratory drilling activities at the Macondo Well under a Drilling Contract between the Appellant BP American Production Company's (together with its affiliates, "BP")

predecessor and Transocean's predecessor. This Contract required Transocean to maintain certain minimum insurance coverages for the benefit of BP. The extent to which these policies covered BP's pollution-related liabilities arising from the *Deepwater Horizon* Incident is the subject of this appeal.

**The Insurance Contracts**

Transocean held insurance policies with a primary liability insurer, Ranger Insurance Ltd. ("Ranger"), as well as several excess liability insurers led by London market syndicates ("Excess Insurers;" together with Ranger, "Insurers"). Transocean's insurance policy with Ranger provided at least $50 million of general liability coverage, and its policies with the Excess Insurers formed four layers of excess coverage directly above the Ranger Policy that provided at least $700 million of additional general liability coverage. The Ranger and Excess Policies contain materially identical provisions.[2] The Policy terms that are important to this case are "Insured" and "Insured Contract." The Policies define "Insured" as including the Named Insured, other parties, and

> (c) any person or entity to whom the "Insured" is obliged by any oral or written "Insured Contract" (including contracts which are in agreement but have not been formally concluded in writing) entered into before any relevant "Occurrence", to provide insurance such as is afforded by this Policy . . . .

The Policies define "Insured Contract" as follows:

> The words "Insured Contract", whenever used in this Policy, shall mean any written or oral contract or agreement entered into by the "Insured" (including contracts which are in agreement but have not been formally concluded in writing) and pertaining to business under which the "Insured" assumes the tort liability of another party to pay for "Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" to a "Third Party" or organization.

---

[2] As the district court noted (and the Insurers have not disputed), this similarity allows the court to treat all of the Insurers as one for purposes of analysis in this case.

No. 12-30230

Tort Liability means a liability that would be imposed by law in the absence of any contract or agreement.[3]

**The Drilling Contract**

The Drilling Contract defines BP's and Transocean's obligations to one another, separately identifying the liabilities each party assumes. Article 20 of the Contract is a singular provision that imposes upon Transocean an insurance requirement:

> 20.1 <u>INSURANCE</u>
> Without limiting the indemnity obligations or liabilities of CONTRACTOR [Transocean] or its insurer, at all times during the term of this CONTRACT, CONTRACTOR **shall maintain insurance covering the operations to be performed under this CONTRACT as set forth in Exhibit C**.

(Emphasis added.) Exhibit C to the Drilling Contract is titled "Insurance Requirements" and establishes the types and minimum level of coverage that Transocean is obligated to maintain. This Exhibit provides that Transocean shall carry all insurance at its own expense and that the policies "shall be endorsed to provide that there will be no recourse against [BP] for payment of premium." Further, Exhibit C states:

> [BP], its subsidiaries and affiliated companies, co-owners, and joint venturers, if any, and their employees, officers and agents **shall be named as additional insureds in each of [Transocean's] policies, except Workers' Compensation for liabilities assumed by [Transocean] under the terms of this Contract**.

(Emphasis added.)

**The Procedural History**

---

[3] The Policies contain further provisions addressing other insureds. Endorsement 1 provides a general condition that additional insureds are automatically included where required by written contract. Condition D.1 to Section I coverage limits the coverage of additional insureds: Transocean has the privilege to name additional insureds only to the extent as is required under contract or agreement.

No. 12-30230

Following the Incident, BP notified the Insurers of its *Deepwater Horizon*-related losses. The Excess Insurers and Ranger each filed a one-count declaratory judgment action against BP.[4] The Insurers' complaints are substantively identical—both request a declaration that the Insurers have "no additional-insured obligation to BP with respect to pollution claims against BP for oil emanating from BP's well" as a result of the *Deepwater Horizon* Incident. The Insurers acknowledge that "the [D]rilling Contract requires additional insured protection in favor of certain BP entities." Thus, all parties concede that the Drilling Contract is an "insured contract" under the policies and that the policies provide some insurance coverage to BP as an additional insured. The issue in contention is the scope of BP's insurance coverage.

In July 2011, BP moved for judgment on the pleadings, under Rule 12(c) of the Federal Rules of Civil Procedure, against the Insurers. Relying upon Texas and Fifth Circuit precedent as developed in *Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660 (Tex. 2008), and in *Aubris Resources LP v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 483 (5th Cir. 2009), BP argued (1) it was an "additional insured" under the insurance policies at issue and (2) the insurance policies alone—and not the indemnities detailed in the Drilling Contract—govern the scope of BP's coverage rights as an "additional insured."[5]

The district court found *ATOFINA* and *Aubris* are distinguishable from the case at hand and denied BP's Rule 12(c) motion in November 2011. In

---

[4] In February 2011, the Judicial Panel on Multidistrict Litigation transferred both cases to the United States District Court for the Eastern District of Louisiana for coordinated pretrial proceedings with the other *Deepwater Horizon*-related litigation pending in that court. In March 2011, Transocean moved for leave to intervene in the consolidated actions, which motion the court granted.

[5] BP argues this motion did not require a determination of any rights or obligations of BP or Transocean to one another under any provisions of the Drilling Contract.

particular, the court read Transocean's insurance obligation in Exhibit C to the Drilling Contract to be to name BP as an "additional insured[] in each of [Transocean's] policies . . . for liabilities assumed by [Transocean] under the terms of the contract." That is, the district court found BP's proffered reading of this clause unreasonable, and read the clause as if there were a comma following the phrase "except Workers' Compensation;" this reading rendered those three words their own discrete carve out from liability. Reasoning further that this interpretation required Transocean to name BP as an insured only for liabilities Transocean explicitly assumed under the contract, the court then looked to Article 24 of the Drilling Contract to conclude that BP was not covered under Transocean's policy for the pollution-related liabilities deriving from the *Deepwater Horizon* Incident (as the spill originated below the surface of the water).[6]

Following further submissions of the parties, the district court then entered a partial final judgment on the Insurers' complaints under Rule 54(b).

---

[6] With respect to pollution-related liabilities, Article 24.1 of the Contract provides:

> CONTRACTOR [Transocean] shall assume full responsibility for and shall protect, release, defend, indemnify, and hold COMPANY [BP] and its joint owners harmless from and against any loss, damage, expense, claim, fine, penalty, demand, or liability **for pollution or contamination**, including control and removal thereof, **originating on or above the surface of the land or water**, from spills, leaks, or discharges of fuels, lubricants, motor oils, pipe dope, paints, solvents, ballast, air emissions, bilge sludge, garbage, or any other liquid or solid whatsoever in possession and control of CONTRACTOR .
> . . .

(Emphasis added.) Article 24.2 then provides:

> COMPANY [BP] shall assume full responsibility for and shall protect, release, defend, indemnify, and hold CONTRACTOR [Transocean] harmless from and against any loss, damage, expense, claim, fine, penalty, demand, or liability **for pollution or contamination**, including control and removal thereof, **arising out of or connected with operations under this CONTRACT hereunder and not assumed by CONTRACTOR in Article 24.1 above** . . . .

(Emphasis added.)

No. 12-30230

Effective March 1, 2012, the court held "by its terms, the Court's Order and Reasons [on BP's motion for judgment on the pleadings] not only denied BP's motion but also granted judgment on the pleadings against [BP] and in favor of the Plaintiff Insurers on the Plaintiff Insurers' complaints."[7] BP timely appealed. A unanimous panel of this court initially reversed the district court's judgment. *In re Deepwater Horizon*, 710 F.3d 338 (5th Cir. 2013). The Insurers and Transocean petitioned for rehearing, and we withdrew that ruling to certify the following question to the Texas Supreme Court.

### III. Legal Issues

BP appeals the district court's conclusion that it is not entitled to coverage under the policies, because Transocean was only required to name BP as an additional insured as to the risks Transocean assumed in the indemnities provisions of the Drilling Contract.

### A.

The first issue is the scope of BP's coverage as an additional insured, and whether the umbrella policy itself determines the extent of coverage, or the indemnity clauses in the Drilling Contract effectively limit BP's coverage.

In 2008, the Texas Supreme Court addressed "whether a commercial umbrella insurance policy that was purchased to secure the insured's indemnity obligation in a service contract with a third party also provides direct liability coverage for the third party." *ATOFINA*, 256 S.W.3d at 662. Both the appellants and the appellees agree this case is instructive, but they proffer different applications of its holding to the facts of the case at issue. Uncertainty regarding the outcome under *ATOFINA* ultimately triggered this certification.

---

[7] In its brief, BP notes that this partial final judgment was entered in favor of the Insurers "and Transocean" and argues that Transocean is not a proper party to this order. BP's Rule 12(c) motion was directed only to the Insurers' complaints and claims—not against Transocean.

No. 12-30230

In *ATOFINA*, ATOFINA owned an oil refinery at which it hired Triple S to perform maintenance functions. *Id.* at 662. ATOFINA and Triple S entered a services contract which stipulated that ATOFINA was to be named an additional insured in each of Triple S's policies. Specifically, this provision stated:

> [ATOFINA], its parents, subsidiaries and affiliated companies, and their respective employees, officers and agents shall be named as additional insured in each of [Triple S's] policies, except Workers' Compensation; however, such extension of coverage shall not apply with respect to any obligations for which [ATOFINA] has specifically agreed to indemnify [Triple S].[8]

After a Triple S employee drowned while servicing the ATOFINA refinery, his estate sued ATOFINA and Triple S for wrongful death. *Id.* at 663. Triple S's insurer, Evanston, and ATOFINA disagreed over who was required to pay for the litigation; ATOFINA contended it was an additional insured and thus covered, while Evanston argued ATOFINA's agreement to indemnify Triple S for ATOFINA's sole negligence precluded coverage. *Id.*

The Texas Supreme Court began by noting that ATOFINA sought coverage from Evanston on the basis that it was Triple S's additional insured—and had not sought indemnity directly from Triple S. *Id.* at 663-64. The court next looked to Section III.B.6 of the policy, which defined who is an insured as

> A person or organization for whom you have agreed to provide insurance as is afforded by this policy; but that person or organization is an insured only with respect to operations performed by you or on your behalf, or facilities owned or used by you.

---

[8] Petitioner's Br. on the Merits, *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660 (Tex. 2008) (No. 03-0647), 2004 WL 1047377, at *4. Triple S also agreed to indemnify ATOFINA from all personal injuries and property losses sustained during the performance of the contract, "except to the extent that any such loss is attributable to the concurrent or sole negligence, misconduct, or strict liability of [ATOFINA]." 256 S.W.3d at 662.

*Id.* at 664. Because, by its own terms, this Section covered ATOFINA "with respect to operations performed by" Triple S, the court found this Section provided ATOFINA direct coverage even for its sole negligence.[9] *Id.* at 667. The court reached this conclusion, in part, because it found "it . . . unmistakable that the agreement in this case to extend *direct* insured status to ATOFINA as an additional insured is separate and independent from ATOFINA's agreement to forego *contractual* indemnity for its own negligence."[10] *Id.* at 670.

In this appeal, BP focuses upon the *ATOFINA* court's statement that, "[i]nstead of looking, as the court of appeals did, to the indemnity agreement in the service contract to determine the scope of coverage, we base our decision on the terms of the umbrella insurance policy itself." 256 S.W.3d at 664. And it further highlights that, as in *ATOFINA*, it is seeking insurance coverage from the Insurers, not indemnification from Transocean, and that the umbrella policy itself does not limit coverage for additional insureds.[11] Because the additional insured provision and the indemnities provisions in the Drilling Contract are separate and independent, because the Policy provides coverage to additional insureds "such as is afforded by this Policy," and because Transocean would be covered for the injuries at issue, BP contends it, too, is entitled to coverage.

The Insurers and Transocean, to the contrary, highlight the differences between the additional insured provisions at issue in *ATOFINA* and here. The *ATOFINA* clause, they proffer, imposed a broad requirement to list ATOFINA

---

[9] Moreover, the court stated that "had the parties intended to insure ATOFINA for vicarious liability only, 'language clearly embodying that intention was available.'" *Id.* at 666 (citing *McIntosh v. Scottsdale Ins. Co.*, 992 F.2d 251, 255 (10th Cir. 1993)).

[10] The court further "disapprove[d] of the view that this kind of additional insured requirement fails to establish a separate and independent obligation for insuring liability." 256 S.W.3d at 670.

[11] For example, that policy does not say coverage for additional insureds is "limited to the liabilities assumed by the Named Insured in the agreement between the Named Insured and Additional Insured."

as an additional insured, whereas the analogous clause in the Drilling Contract creates a far more limited obligation, namely, to name BP as an additional insured only for liabilities Transocean specifically assumed in the contract. Furthermore, they contend that this language renders the additional insured provision inextricable from the indemnities provisions of the Drilling Contract; unlike in *ATOFINA*, the additional insured requirement is not separate and independent. They argue further the umbrella policy requires an "Insured Contract" exist between the named insured and the third party, while in *ATOFINA* no contract was required. In combination, the appellees contend, these factors allow the court to consider the indemnities clauses in the Drilling Contract in discerning the extent to which BP is covered as an additional insured.

Because there are potentially important distinctions between the facts of the instant case and *ATOFINA*, the outcome is not entirely clear.

## B.

In the event the court must consider whether the Drilling Contract imposes limitations upon BP's coverage as an additional insured, an issue then arises of how to interpret the additional insured provision of that Contract. The parties offer competing interpretations, and which party prevails may depend upon whether the doctrine of *contra proferentem* applies.

Texas law has consistently held that, if an insurance coverage provision is susceptible to more than one reasonable interpretation, the court must interpret that provision in favor of the insured, so long as that interpretation is reasonable. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). The court must do so even if the insurer's interpretation is *more* reasonable than the insured's—"[i]n particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured," *id.*, and "[a]n intent to exclude coverage must be expressed in

clear and unambiguous language." *ATOFINA*, 256 S.W.3d at 668, 668 n.27 (citing *Hudson Energy*, 811 S.W.2d at 555); *see also Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 577 (5th Cir. 2009) ("If . . . ambiguity is found, the contractual language will be 'liberally' construed in favor of the insured." (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987))).

This rule favoring the insured derives, in part, from the "special relationship between insurers and insureds arising from the parties' unequal bargaining power." *Balandran v. Safeco Ins. Co. of America*, 972 S.W.2d 738, 741 n.1 (Tex. 1998). This aspect of the rule's foundation hearkens to the doctrine of *contra proferentem*, which construes any ambiguities against the drafter, and the "sophisticated insured" exception, which may apply when the policy is in some way negotiable (i.e., it is not a contract of adhesion) and the insured is as capable as the insurer of interpreting the contract.

The Texas Supreme Court has never recognized a sophisticated insured exception to the general rule of interpreting insurance coverage clauses, nor has it ever indicated *contra proferentem* would not apply in construing these clauses. *See, e.g.*, *ATOFINA*, 256 S.W.3d at 668 (stating the traditional rule construing coverage clauses in favor of the insured). Given that Texas has long recognized its rules regarding interpretation of insurance coverage clauses are partially derivative of the unequal bargaining power typical in many negotiations over insurance contracts, however, it is possible that such an exception may be deemed appropriate in a case like this, where all the parties involved are highly capable contractors.[12] On the one hand, the facts here indicate Insurers were not involved in drafting the Drilling Contract, and thus construing ambiguities in that contract against them might be inappropriate. But on the other, the

---

[12] One federal district court in Texas has found that the sophisticated insured exception might apply under Texas law, given the right circumstances. *Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting, Ltd.*, 729 F. Supp. 2d 814, 824-25 (N.D. Tex. 2010).

No. 12-30230

Insurers were involved in drafting the umbrella policy language at issue, and the failure of that policy language to limit coverage in underlying "Insured Contracts" to the liabilities assumed by the named insured in those contracts is part of what ails the Insurers now.

## C.

Each party contends that its interpretation and application of *ATOFINA* better advances the goals of Texas insurance law and is more aligned with the intent of the parties. Their arguments illuminate the magnitude and wide ramifications, both throughout the oil and gas industry and for insurance law, of this case. Where state law governs such an issue, these policy factors are better gauged by the state high court than by a federal court.

## IV. Questions Certified

For the reasons discussed above, we hereby certify the following determinative questions of Texas law to the Supreme Court of Texas.

1. Whether *Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660 (Tex. 2008), compels a finding that BP is covered for the damages at issue, because the language of the umbrella policies alone determines the extent of BP's coverage as an additional insured if, and so long as, the additional insured and indemnity provisions of the Drilling Contract are "separate and independent"?

2. Whether the doctrine of *contra proferentem* applies to the interpretation of the insurance coverage provision of the Drilling Contract under the *ATOFINA* case, 256 S.W.3d at 668, given the facts of this case?

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified.

14