# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 20, 2023

Lyle W. Cayce
Clerk

———————

No. 22-30393
CONSOLIDATED WITH NOS.
22-30394, 22-30395, 22-30396, 22-30397, 22-30496, 22-30499, 22-30500, 22-30501, 22-30502, 22-30503, 22-30504, 22-30505, 22-30506, 22-30508, 22-30512, 22-30513, 22-30514, 22-30515, 22-30516, 22-30517, 22-30518, 22-30519, 22-30520, 22-30521, 22-30522, 22-30523, 22-30524, 22-30525, 22-30528, 22-30529, 22-30532, 22-30535, 22-30536, 22-30542, 22-30592, 22-30593, 22-30596, 22-30599, 22-30604

———————

COREY DARNELL STREET, ET AL.,

*Plaintiffs—Appellants*,

*versus*

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.; TRANSOCEAN HOLDINGS, L.L.C.; TRANSOCEAN DEEPWATER, INCORPORATED; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INCORPORATED; HALLIBURTON ENERGY SERVICES, INCORPORATED,

*Defendants—Appellees*,

———————————————————

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:10-MD-2179, 2:17-CV-3619,
2:10-MD-2179, 2:17-CV-3548,
2:10-MD-2179, 2:17-CV-3582,
2:10-MD-2179, 2:17-CV-3308,

3

2:10-MD-2179, 2:17-CV-3304,
2:10-MD-2179, 2:17-CV-4144,
2:10-MD-2179, 2:17-CV-3026,
2:10-MD-2179, 2:17-CV-4068,
2:10-MD-2179, 2:17-CV-4590,
2:10-MD-2179, 2:17-CV-3051,
2:10-MD-2179, 2:17-CV-4223,
2:10-MD-2179, 2:17-CV-3261,
2:10-MD-2179, 2:17-CV-4073,
2:10-MD-2179, 2:17-CV-4262,
2:10-MD-2179, 2:17-CV-4138,
2:10-MD-2179, 2:17-CV-3040,
2:10-MD-2179, 2:17-CV-4234,
2:10-MD-2179, 2:17-CV-4399,
2:10-MD-2179, 2:17-CV-3139,
2:10-MD-2179, 2:17-CV-3645,
2:10-MD-2179, 2:17-CV-4417,
2:10-MD-2179, 2:17-CV-4190,
2:10-MD-2179, 2:17-CV-3888,
2:10-MD-2179, 2:17-CV-4075,
2:10-MD-2179, 2:17-CV-3117,
2:10-MD-2179, 2:17-CV-3128,
2:10-MD-2179, 2:17-CV-3260,
2:10-MD-2179, 2:17-CV-4235,
2:10-MD-2179, 2:17-CV-4509,
2:10-MD-2179, 2:17-CV-3047,
2:10-MD-2179, 2:17-CV-4330,
2:10-MD-2179, 2:17-CV-3510,
2:10-MD-2179, 2:17-CV-3036,
2:10-MD-2179, 2:17-CV-3219,
2:10-MD-2179, 2:17-CV-3257,
2:10-MD-2179, 2:17-CV-3298,
2:10-MD-2179, 2:17-CV-3281,
2:10-MD-2179, 2:17-CV-4643,
2:10-MD-2179, 2:17-CV-4633,
2:10-MD-2179, 2:17-CV-4551

_____

No. 22-30393
c/w Nos. 22-30394, 22-30395, 22-30396, 22-30397, 22-30496, 22-30499, 22-30500, 22-30501, 22-30502, 22-30503, 22-30504, 22-30505, 22-30506, 22-30508, 22-30512, 22-30513, 22-30514, 22-30515, 22-30516, 22-30517, 22-30518, 22-30519, 22-30520, 22-30521, 22-30522, 22-30523, 22-30524, 22-30525, 22-30528, 22-30529, 22-30532, 22-30535, 22-30536, 22-30542, 22-30592, 22-30593, 22-30596, 22-30599, 22-30604

Before RICHMAN, *Chief Judge*, and SOUTHWICK, and OLDHAM, *Circuit Judges*.

LESLIE H. SOUTHWICK, *Circuit Judge*:

These consolidated cases continue this court's saga of *Deepwater Horizon*. These plaintiffs argue the district court judge abused his discretion by failing to disqualify himself at their request. We conclude that any error was harmless and AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

The issues surrounding *Deepwater Horizon* have been detailed in numerous appeals in this court. *See, e.g.*, *In re Deepwater Horizon*, 728 F.3d 491, 494–97 (5th Cir. 2013). We will only discuss the facts and procedural history pertinent to these 40 consolidated cases. The plaintiff in the lead case among the 40 is Corey Street. Counsel for all 40 appellants states that the "consolidated cases are nearly identical as far as the issues involved and the arguments presented to the lower court." We will refer to the parties as the Street plaintiffs, or, at times, just the plaintiffs.

Before these plaintiffs' cases were distributed to the district court, these cases were part of MDL 2179, the multi-district litigation proceeding before United States District Court Judge Carl J. Barbier in the Eastern District of Louisiana. Judge Barbier established what is known as the "B3 Bundle" within the overall litigation. The B3 Bundle included claims for personal injury and wrongful death due to exposure to oil and/or other chemicals used during the response to the disaster. By a pre-trial order dated January 12, 2011, Judge Barbier ruled that claimants could intervene into the B3 Bundle Master Complaint by filing a "Short-Form Joinder." The Street plaintiffs

No. 22-30393
c/w Nos. 22-30394, 22-30395, 22-30396, 22-30397, 22-30496, 22-30499, 22-30500, 22-30501, 22-30502, 22-30503, 22-30504, 22-30505, 22-30506, 22-30508, 22-30512, 22-30513, 22-30514, 22-30515, 22-30516, 22-30517, 22-30518, 22-30519, 22-30520, 22-30521, 22-30522, 22-30523, 22-30524, 22-30525, 22-30528, 22-30529, 22-30532, 22-30535, 22-30536, 22-30542, 22-30592, 22-30593, 22-30596, 22-30599, 22-30604

timely did so. After joining the Master Complaint, a class action settlement of the B3 claims was reached in May 2012 and approved by a final order filed on January 11, 2013. The Street plaintiffs timely opted out of the class settlement.

The Phase One trial established liability for the oil spill and took place from February 25 to April 17, 2013. The Street plaintiffs were parties to MDL 2179 and the Phase One trial that established liability of certain defendants for the oil spill. In this trial, the Stone Pigman law firm in New Orleans represented Cameron International, the manufacturer of the blowout preventer that failed and was alleged as a cause of the catastrophic BP Oil Spill. As a potential contributor to the spill, Cameron was directly adverse to the Street plaintiffs in the Phase One liability trial. The district court found that BP Exploration & Production Inc. and BP America Production Co. were "67%" responsible for the spill, and Transocean and Halliburton were responsible for the remainder. No liability was found as to Cameron, and the district court dismissed all claims against Cameron.

After the finding of liability in the Phase One trial, the Street plaintiffs were ordered to file individual lawsuits. These individual lawsuits named as defendants all parties found to be liable for causing the BP oil spill. A master complaint was drafted to cover claims for personal injuries, and no version of that master complaint has named Cameron as a party. Individual complaints were also filed, and none of the Street plaintiffs named Cameron. The Street plaintiffs alleged that exposure to substances associated with the spill caused various injuries. Thus, the Street plaintiffs have not alleged any liability against Cameron in the B3 litigation, as that question was resolved to finality in the separate Phase One trial.

No. 22-30393
c/w Nos. 22-30394, 22-30395, 22-30396, 22-30397, 22-30496, 22-30499, 22-30500, 22-30501, 22-30502, 22-30503, 22-30504, 22-30505, 22-30506, 22-30508, 22-30512, 22-30513, 22-30514, 22-30515, 22-30516, 22-30517, 22-30518, 22-30519, 22-30520, 22-30521, 22-30522, 22-30523, 22-30524, 22-30525, 22-30528, 22-30529, 22-30532, 22-30535, 22-30536, 22-30542, 22-30592, 22-30593, 22-30596, 22-30599, 22-30604

Following Judge Barbier's severance order, 85 B3 cases were assigned to District Judge Barry Ashe. Judge Ashe has been a federal district judge since 2018. Before his confirmation, he was a longtime partner at the Stone Pigman law firm. His history with Stone Pigman is a well-known fact among lawyers who practice in New Orleans. Upon having their cases assigned to Judge Ashe, no B3 plaintiff, including the Street plaintiffs, raised any objection to his consideration of their cases. Plaintiffs' counsel in this appeal, though, asserts he was unaware of Judge Ashe's background.

After the cases were assigned to him, Judge Ashe began issuing discovery orders, complete with schedules for expert reports and dispositive motion practice. For example, Judge Ashe held a scheduling conference in the current case on September 15, 2021. He gave the parties three months to amend their complaints and answers. Street was ordered to designate his experts by April 11, 2022. The district judge further ordered that all "pretrial motions, including dispositive motions and motions *in limine* regarding the admissibility of expert testimony, shall be filed and served in sufficient time to permit hearing thereon no later than June 2, 2022." This gave the parties more than nine months to conduct discovery in the 40 consolidated cases, in addition to the extensive information exchanges that had already occurred before the cases were severed from the MDL.

The Street plaintiffs, along with hundreds of other B3 plaintiffs, retained Dr. Jerald Cook as their causation expert. On June 2, 2022, following discovery and briefing and consistent with the timeline set forth in the scheduling order, Judge Ashe excluded Dr. Cook's report in five B3 cases, including Street's, because Dr. Cook's "opinions on general causation d[id] not meet the *Daubert* standard of reliability." *See Daubert v. Merrell Dow*

No. 22-30393
c/w Nos. 22-30394, 22-30395, 22-30396, 22-30397, 22-30496, 22-30499, 22-30500, 22-30501, 22-30502, 22-30503, 22-30504, 22-30505, 22-30506, 22-30508, 22-30512, 22-30513, 22-30514, 22-30515, 22-30516, 22-30517, 22-30518, 22-30519, 22-30520, 22-30521, 22-30522, 22-30523, 22-30524, 22-30525, 22-30528, 22-30529, 22-30532, 22-30535, 22-30536, 22-30542, 22-30592, 22-30593, 22-30596, 22-30599, 22-30604

*Pharms., Inc.*, 509 U.S. 579, 593–95 (1993). Those plaintiffs offered no admissible expert testimony regarding general causation. Therefore, Judge Ashe granted summary judgment to the BP defendants.

On June 17, 2022, a little more than two weeks after Judge Ashe began granting summary judgments following exclusion of Dr. Cook, Street's counsel moved to disqualify Judge Ashe in the five cases in which he had excluded Dr. Cook and in other cases where *Daubert* and summary judgment motions were still pending. These motions sought Judge Ashe's disqualification on two grounds: (1) he was a partner at Stone Pigman when other lawyers there represented Cameron in the Phase One trial, allegedly requiring disqualification under 28 U.S.C. § 455(b)(2); and (2) he previously represented Noble Energy, a company that allegedly "was and is a joint venture partner with the BP Defendants in numerous Gulf of Mexico oil lease transactions," thus potentially triggering disqualification under 28 U.S.C. § 455(a).

On June 30, 2022, while briefing regarding disqualification was ongoing, plaintiffs Street, Johns, Johnson, Macon, and Murray (all of whom are appellants here) appealed Judge Ashe's decisions excluding Dr. Cook's testimony and granting summary judgment to BP. Accordingly, on July 12, 2022, Judge Ashe concluded that, as to those five plaintiffs, he no longer had jurisdiction to decide their disqualification motions. On July 14, 2022, Judge Ashe denied the remaining disqualification motions as untimely and meritless.

In July 2022, after Judge Ashe and other judges began excluding Dr. Cook's testimony, hundreds of B3 plaintiffs moved to suspend the deadlines for dispositive motions. As relevant to these consolidated appeals, on July

No. 22-30393
c/w Nos. 22-30394, 22-30395, 22-30396, 22-30397, 22-30496, 22-30499, 22-30500, 22-30501, 22-30502, 22-30503, 22-30504, 22-30505, 22-30506, 22-30508, 22-30512, 22-30513, 22-30514, 22-30515, 22-30516, 22-30517, 22-30518, 22-30519, 22-30520, 22-30521, 22-30522, 22-30523, 22-30524, 22-30525, 22-30528, 22-30529, 22-30532, 22-30535, 22-30536, 22-30542, 22-30592, 22-30593, 22-30596, 22-30599, 22-30604

11, 2022, the plaintiffs other than Street, Johns, Johnson, Macon, and Murray — who already filed their notices of appeal — began moving to suspend Judge Ashe's deadlines for dispositive motions. These motions faulted BP for Dr. Cook's inability to offer admissible general-causation testimony, arguing that BP's and the federal government's failure to collect biomonitoring and dermal testing data prevented Dr. Cook from admissible testimony.

These challenges arose after a discovery dispute in another Eastern District of Louisiana case (not a B3 case), where the plaintiffs filed a "Back-End Litigation Option" claim and took a Rule 30(b)(6) deposition of a former BP employee. *See Torres-Lugo v. BP Expl. & Prod. Inc.*, No. CV 20-210, 2022 WL 2806420 (E.D. La. July 18, 2022). The many B3 plaintiffs who sought to extend their dispositive motion deadlines, including the Street plaintiffs, all invoked the *Torres-Lugo* discovery dispute as the basis for their requests. These requests were rejected by multiple district judges because the discovery dispute issue did not resolve the insufficiency of Dr. Cook's expert testimony to establish general causation. Judge Ashe concluded the same and rejected the requests. After that ruling, the Street plaintiffs filed disqualification motions, essentially identical to those previously denied, and these motions were likewise denied.

The Street plaintiffs timely appealed Judge Ashe's final judgments in BP's favor, and this court consolidated these 40 appeals. To be precise, 39 of the 40 cases in this consolidated appeal used Dr. Cook as their expert. For those, Judge Ashe granted BP's *Daubert* motion to exclude and BP's motion for summary judgment. In the remaining appeal, Judge Ashe granted summary judgment to BP because that plaintiff neither filed an expert report nor opposed BP's motion for summary judgment.

7

No. 22-30393
c/w Nos. 22-30394, 22-30395, 22-30396, 22-30397, 22-30496, 22-30499, 22-30500, 22-30501, 22-30502, 22-30503, 22-30504, 22-30505, 22-30506, 22-30508, 22-30512, 22-30513, 22-30514, 22-30515, 22-30516, 22-30517, 22-30518, 22-30519, 22-30520, 22-30521, 22-30522, 22-30523, 22-30524, 22-30525, 22-30528, 22-30529, 22-30532, 22-30535, 22-30536, 22-30542, 22-30592, 22-30593, 22-30596, 22-30599, 22-30604

## DISCUSSION

The Street plaintiffs do not challenge Judge Ashe's decision to exclude Dr. Cook's testimony under *Daubert*, nor do they raise any argument on the merits as to why his granting of summary judgment to BP was erroneous. In the briefing before this court, the two arguments raised were that Judge Ashe should have disqualified himself, and, in the alternative, that he should have extended the case-management deadlines. Plaintiff's counsel was unclear at oral argument whether he was abandoning the second issue. Later, when responding to BP's Federal Rule of Appellate Procedure 28(j) letter, Plaintiffs' counsel unambiguously abandoned it by stating that "the sole issue in this appeal [is] whether Judge Ashe should have recused himself." Thus, that is the only issue we address.

This court reviews the denial of a motion to disqualify under an abuse of discretion standard. *In re Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir. 1993). The Street plaintiffs argue that Judge Ashe abused his discretion for not disqualifying himself under 28 U.S.C. § 455(b)(2) because he was a partner at Stone Pigman when it represented Cameron in the Phase One liability trial.

Section 455(b)(2) provides that a judge shall disqualify himself "[w]here in private practice[,] he served as [a] lawyer in the *matter in controversy*, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it." (emphasis added). The Street plaintiffs argue Judge Ashe was *required* to recuse under this provision — that he had no discretion. They argue extensively that Judge Ashe's position at Stone Pigman was "exactly the adverse relationship that requires mandatory

No. 22-30393
c/w Nos. 22-30394, 22-30395, 22-30396, 22-30397, 22-30496, 22-30499, 22-30500, 22-30501, 22-30502, 22-30503, 22-30504, 22-30505, 22-30506, 22-30508, 22-30512, 22-30513, 22-30514, 22-30515, 22-30516, 22-30517, 22-30518, 22-30519, 22-30520, 22-30521, 22-30522, 22-30523, 22-30524, 22-30525, 22-30528, 22-30529, 22-30532, 22-30535, 22-30536, 22-30542, 22-30592, 22-30593, 22-30596, 22-30599, 22-30604

disqualification." They do not, however, cite authority in support of their position.

Judge Ashe held that these motions to disqualify were all untimely. Nonetheless, he issued an order with his reasons for denying the motions, and he rejected the arguments as untimely and meritless.[1]

As to timeliness, Judge Ashe explained that his prior employment with Stone Pigman was so "widely known" that "[i]t is hard to believe that [these plaintiffs'] attorneys had no knowledge of these facts until two weeks after this Court granted motions for summary judgment dismissing other B3 cases." Indeed, the motions "came fourteen months after" these cases were assigned to Judge Ashe and were "based on facts that are generally public knowledge — and presumably even better known to lawyers long part of the *Deepwater Horizon* MDL." Judge Ashe further observed that four of the lawyers on the disqualification motions' signature blocks practiced in "the New Orleans area." Judge Ashe also faulted their failure to "explain how or why [these] attorneys only learned or acquired this information after these five other B3 cases were dismissed and judgment entered." He thus found that, in light of "the totality of the circumstances," those motions "appear[ed] to be an attempt to manipulate the system and [were] not filed timely."

Judge Ashe also denied the disqualification motions as meritless. Specifically, he concluded that "Stone Pigman's representation of Cameron in

---

[1] Judge Ashe's order denying the disqualification motions was issued in the case of plaintiff Carpenter, also an appellant, and all other orders adopted that discussion and ruling.

9

No. 22-30393
c/w Nos. 22-30394, 22-30395, 22-30396, 22-30397, 22-30496, 22-30499, 22-30500, 22-30501, 22-30502, 22-30503, 22-30504, 22-30505, 22-30506, 22-30508, 22-30512, 22-30513, 22-30514, 22-30515, 22-30516, 22-30517, 22-30518, 22-30519, 22-30520, 22-30521, 22-30522, 22-30523, 22-30524, 22-30525, 22-30528, 22-30529, 22-30532, 22-30535, 22-30536, 22-30542, 22-30592, 22-30593, 22-30596, 22-30599, 22-30604

the phase one liability trial is sufficiently unrelated to the case presently before the [c]ourt as not to trigger the [§ 455(b)(2)] 'matter in controversy' requirement" because, among other reasons, "Cameron has never been a party to the B3 cases, and its liability has never been a question in these cases." According to Judge Ashe, the matter in controversy in the B3 cases "involves issues that are discrete, separate, and distinct from the issues handled by [Judge Ashe's] former partners."[2] The Street plaintiffs' claims, both in the district court and on appeal, "raise issues concerning causation and damages for [] personal injuries," not "what caused the oil spill and who was responsible." Accordingly, Judge Ashe observed, he "will not be asked to address the merits of any issue in which his former partners were involved." Judge Ashe explained that "[t]here is no indication that Noble was a party to any *Deepwater Horizon* litigation or had any involvement at all with that oil well," nor was he "even aware of Noble's joint ventures with BP when he represented Noble." He thus concluded that "a well-informed, thoughtful, and objective observer would not question [his] impartiality."[3]

The Street plaintiffs do not challenge the judge's actual impartiality on appeal. Instead, they rely solely on the "matter in controversy" language found in Section 455(b)(2) and argue that recusal was mandatory. Yet even mandatory recusal under Section 455(b)(2) can be harmless. We have expressed "confiden[ce] that [Section] 455(b) violations are also subject to the

---

[2] Judge Ashe also conducted an analysis of impartiality under 28 U.S.C. § 455(a) and (b)(1), but neither of those bases for disqualification is raised on appeal.

[3] The Street plaintiffs do not brief any argument regarding Noble Energy.

No. 22-30393
c/w Nos. 22-30394, 22-30395, 22-30396, 22-30397, 22-30496, 22-30499, 22-30500, 22-30501, 22-30502, 22-30503, 22-30504, 22-30505, 22-30506, 22-30508, 22-30512, 22-30513, 22-30514, 22-30515, 22-30516, 22-30517, 22-30518, 22-30519, 22-30520, 22-30521, 22-30522, 22-30523, 22-30524, 22-30525, 22-30528, 22-30529, 22-30532, 22-30535, 22-30536, 22-30542, 22-30592, 22-30593, 22-30596, 22-30599, 22-30604

doctrine of harmless error," not just Section 455(a) violations. *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 485 (5th Cir. 2003).

For possible harmlessness of a failure to recuse, we apply these factors: "(1) the risk of injustice to the parties in this case; (2) the risk that denial of relief will create injustice in other cases; and (3) 'the risk of undermining the public's confidence in the judicial process.'" *Id.* (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)).

Relevant facts include that Judge Ashe's 30-year association with Stone Pigman ended in 2018. That law firm's representation of Cameron occurred early in the *Deepwater Horizon* litigation a decade ago, and there is no evidence in the record that suggests lawyer Ashe worked on that litigation.

As to possible injustice to the parties, our review of the summary judgment granted in this case is *de novo*. *National Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 68 F.4th 206, 216 (5th Cir. 2023). The Street plaintiffs do not even challenge the merits of the decision. Further, eight other district court judges have reached the same conclusion regarding the exclusion of Dr. Cook's testimony and the plaintiffs' failure to produce expert testimony complying with the strictures of *Daubert*.[4] There is no basis for a belief that these consistent results have been the result of Judge Ashe's actions in this case.

---

[4] *Turner v. BP Expl. & Prod. Inc.*, 2022 WL 2967441, at *5 (E.D. La. July 27, 2022) (Africk, J.) (excluding Dr. Cook's testimony because he "fails to identify a particular chemical and corresponding dose to which [the plaintiff] was exposed"); *Barkley v. BP Expl. & Prod. Inc.*, 2022 WL 2342474, at *4 (E.D. La. June 29, 2022) (Barbier, J.) ("Dr. Cook fails to identify the dose of any such chemical that would result in the adverse health effects contained in his report, and his report is therefore unreliable and inadmissible."); *Harrison v. BP Expl. & Prod. Inc.*, 2022 WL 2390733, at *6 (E.D. La. July 1, 2022) (Morgan,

No. 22-30393
c/w Nos. 22-30394, 22-30395, 22-30396, 22-30397, 22-30496, 22-30499, 22-30500, 22-30501, 22-30502, 22-30503, 22-30504, 22-30505, 22-30506, 22-30508, 22-30512, 22-30513, 22-30514, 22-30515, 22-30516, 22-30517, 22-30518, 22-30519, 22-30520, 22-30521, 22-30522, 22-30523, 22-30524, 22-30525, 22-30528, 22-30529, 22-30532, 22-30535, 22-30536, 22-30542, 22-30592, 22-30593, 22-30596, 22-30599, 22-30604

Finally, "the public's confidence in the judicial process" is not undermined once, after a review of the records in the consolidated cases before us on appeal, it can be seen that Judge Ashe has made the same rulings as his colleagues who have been presented with the same issues.

If Judge Ashe erred when he failed to recuse in these cases, that error was harmless. Nonetheless, as the arguments on this appeal support, potential conflicts of interest must be taken seriously by every member of the judiciary. The litigants and the public need to be confident in the impartiality of those who will decide legal disputes. This appeal is fair warning to each of us of the importance of assuring the reality and appearance of that impartiality.

AFFIRMED.

_____

J.) ("Cook's expert report includes no identification of the necessary dose of exposure for any of Plaintiff's complained-of symptoms to manifest."); *Harris v. BP Expl. & Prod. Inc.*, 2022 WL 2789037, at *7 (E.D. La. July 15, 2022) (Vance, J.) ("Dr. Cook's failure to identify the level of exposure to a relevant chemical that can cause the conditions asserted in plaintiff's complaint renders his opinion unreliable, unhelpful, and incapable of establishing general causation."); *Hill v. BP Expl. & Prod. Inc.*, 2022 WL 4534747, at *6 (E.D. La. Sept. 28, 2022) (Vitter, J.) ("Dr. Cook does not even specify the exact chemicals that Plaintiff was allegedly exposed to, let alone provide evidence regarding the level of exposure at which Plaintiff's symptoms might manifest."); *see also Laster v. BP Expl. & Prod. Inc.*, 2022 WL 5165019, at *1 (E.D. La. Sept. 13, 2022) (Guidry, J.) ("[F]or the previous reasons cited by this Court as well as the seven other judges of this Court, both the *Daubert* Motion and the Motion for Summary Judgment shall be granted."); *Reed v. BP Expl. & Prod. Inc.*, 2022 WL 3099925, at *3 (E.D. La. Aug. 4, 2022) (Milazzo, J.) ("[F]or the same reasons articulated by Judges Ashe, Vance, Barbier, Morgan, and Zainey, the Court grants Defendants' *Motion in Limine*."); *Barksdale v. BP Expl. & Prod. Inc.*, 2022 WL 2789022, at *3 (E.D. La. July 15, 2022) (Zainey, J.) (excluding Dr. Cook's testimony "[f]or the same reasons given by Judges Vance, Barbier, Morgan, and Ashe").